724 P.2d 17

**STATE of Arizona, Appellee,**

**v.**

**Richard James SOLANO and Vickie Kay Solano, Appellants.**

**No. 6717–PR.**

Supreme Court of Arizona,
In Banc.

June 20, 1986.

Reconsideration Denied Sept. 9, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Ross Anderson & Associates by Sheila Harmer and Ross Anderson, Phoenix, for appellants.

CAMERON, Justice.

This is a review of a decision and opinion of the court of appeals which vacated defendants' pleas of guilty and sentences and remanded the matters for a new trial. *State v. Solano*, 150 Ariz. 423, 724 P.2d 42 (App.1985). We have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution, A.R.S. § 12–120.24 and Rule 31.-19, Ariz.R.Crim.P., 17 A.R.S.

The sole issue on review is whether "package deal" plea agreements, offered to multiple defendants, each contingent upon the acceptance of all co-defendant's plea agreements, violate either Rule 17.4 of the Arizona Rules of Criminal Procedure or public policy.

The facts follow. On 6 September 1983, a search warrant was executed on a Scottsdale home and 1382 grams of 80 to 95 percent pure cocaine plus two small bags of marijuana were seized. Three people, Richard Solano, Vickie Hurst and Guy Lindstrom, were present in the house and were arrested. Sometime after their arrest, Richard Solano and Vickie Hurst were married.

By indictment, a grand jury charged Richard Solano, Vickie Hurst-Solano and Guy Lindstrom each with one count of possession of a narcotic drug for sale with a value over $250, a class 2 felony, and one count of possession of marijuana, a class 6 felony.

Prior to trial, each defendant negotiated a plea agreement. These plea agreements were "package deals" in that the state conditioned each defendant's plea on the court's acceptance of the pleas from the other two defendants.

Richard Solano's plea agreement provided that he would plead guilty to possession of cocaine for sale, a class 2 felony (presumptive sentence of 7 years, minimum sentence of 5.25 years, maximum sentence 14 years with probation not available). A.R.S. §§ 13–701, 13–702. He was to receive the minimum sentence of five and one quarter years but was not to be eligible for parole for five years. The possession of marijuana count was to be dismissed.

Both Vickie Hurst-Solano and Guy Lindstrom agreed to enter an *Alford* plea, *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to the lesser charge of possession of cocaine, a class 4 felony (presumptive sentence 4 years, minimum sentence 2 years, maximum sentence 5 years, probation available). A.R.S. §§ 13–701, 13–702. They were each to be sentenced to the maximum sentence of five years. The possession of marijuana count was to be dismissed.

This "package deal" was presented to the trial court at a change of plea hearing. The court expressed concern over the contingent nature of the pleas and therefore deferred acceptance until review of the presentence reports.

At the later hearing, the following transpired:

THE COURT: Time for sentencing and acceptance of the plea in Vickie K. Solano-Hurst—Hurst-Solano, Guy Shane Lindstrom and Richard James Solano, CR–139393.

MR. DONOFRIO: Charles Donofrio appearing on behalf of the State, Your Honor.

MR. ANDERSON: My name is Ross Anderson, I'm here for Richard Solano and Vickie Solano. I'm retained.

MR. KARASEK: David Karasek appearing for Guy Shane Lindstrom.

THE COURT: Have you all had a chance to review the presentence report and notice that the presentence officer disagrees rather substantially with the stipulated sentence in the lesser two cases?

MR. DONOFRIO: Yes, Your Honor.

THE COURT: I will tell you that that concerns me because the investigator here seems to feel that the participation of these two defendants, Lindstrom and Mrs. Solano, is so minimal that five year prison time is not justified.

MR. DONOFRIO: Your Honor, that's not the State's position.

THE COURT: Well, I understand.

MR. DONOFRIO: The State's position is that the quantity of the drugs was so substantial to call for a mandatory prison term. If these individuals were to go to trial and were convicted by a jury they would have to serve five years flat prison time.

We have not only reduced this charge from a class 2 to a class 4, we have also given them the opportunity to have soft time and they would be eligible for work furlough as soon as they leave the Alhambra Center, and as far as Hurst is concerned, as soon as she is through screening at Perryville, they would be eligible immediately for work furlough release of all types that are available to the Department of Corrections.

Mr. Solano is the only one that is going to come under the heavy hand of the Department of Corrections.

MR. DONOFRIO: I believe that it's because of the amount of drugs, the amount that was given by the presentence report is $140,000 worth of cocaine, is a bare minimum of the value of that cocaine. Taking it just at a hundred dollars a gram, it's $138,000 that was 85 to 100 percent pure. There was 490 grams of 100 percent pure cocaine. There were 892 grams of 85 to 100 percent pure cocaine.

Being cut just once, would double that, and I believe that the Court has knowledge that oftentimes is stepped on many times. We have an estimate that that was worth at least a half million dollars on the street.

The State's position further being that all three of these individuals are living in a house in Scottsdale at a very nice neighborhood, all unemployed, not working, all sharing in the proceeds of that drug.

Mr. Anderson responded by admitting that "Mr. Donofrio has been most generous under the circumstances of the plea agreement" but that the court should "try to help us convince Mr. Donofrio and the County Attorney" that probation was better for Hurst-Solano and Lindstrom.

After discussing the mandatory nature of the sentencing process, the court declined to interfere with the plea bargain stating:

THE COURT: I'm powerless.

The court then asked Richard Solano if he had anything to say before sentencing.

MR. SOLANO: Yes, sir. The one most important thing is that I was a friend of another culprit in this. The major culprit, Mr. Zuber, is not here. He's not present. He ran and I just want you to know that I'm not the one that was the main person. I admit my involvement and I'm ready to serve my time, do what I have to do, but I want you to know that I was not the main person and this is not from—I didn't start this thing. I was wrapped up in it. I got involved with it and I know that it's not the right thing at all.

THE COURT: How tragic you got your wife into it.

MR. SOLANO: That's the most important thing I want to say.

THE COURT: In a matter of a few weeks time she goes from a clean record to a felon in prison. Thanks to you.

MR. SOLANO: The thing I want to say about her is that she had absolutely nothing to do with it because she was there with me, for me, she had absolutely

nothing to do with that. That's all I can tell you.

THE COURT: A fingerprint on a bag of cocaine?

MR. SOLANO: I know, but she was not involved with it, but that's the reason why we're signing this and that's the reason why we can't fight it.

THE COURT: Okay.

The trial judge then sentenced the three defendants in conformity with the plea agreements.

The Solanos filed separate appeals that were consolidated in the court of appeals. The court of appeals vacated the Solanos' convictions and sentences, finding that such contingent plea agreements violated both Rule 17.4, Ariz.R.Crim.P., 17 A.R.S. and public policy. We granted the state's petition for review because we disagree with the majority decision of the court of appeals.

The Rules of Criminal Procedure recognize validly negotiated plea agreements as an essential part of the criminal justice system and specifically provide for their existence. Rule 17.4, Ariz.R.Crim.P., 17 A.R.S.; *State v. Superior Court*, 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980).

■ Rule 17.4(a), Ariz.R.Crim.P., 17 A.R.S. provides:

a. Plea Negotiations. The parties may negotiate concerning, and reach an agreement on, any aspect of the disposition of the case. The court shall not participate in any such negotiation.

The trial court, while not allowed to participate in these plea negotiations, must review any plea agreement reached to ensure that the public is protected and the ends of justice are being served. *State v. Superior Court*, 125 Ariz. at 577, 611 P.2d at 930. *See also* Rule 17.4(a), (d) and (e), Ariz.R. Crim.P., 17 A.R.S. However, in reviewing a plea agreement, the trial court may only accept the terms in their entirety or reject them in their entirety. *State v. Superior Court*, 125 Ariz. at 578, 611 P.2d at 931.

The defendants argue that by making their plea agreements contingent on the acceptance of each co-defendant's plea agreement, the trial court was deprived of its ability to review each agreement individually for its acceptability. The court of appeals agreed, finding that such a contingent plea agreement

"improperly places an impermissible burden on the exercise of the court's duties under rule 17.4 to review each plea agreement to see if the ends of justice and the protection of the public are being served, to reject any inappropriate sentence provision, to either accept or reject each plea individually, and to give each defendant an opportunity to withdraw his or her plea if the plea agreement or any provision of it is rejected by the court."

*State v. Solano, supra,* 724 P.2d at 45.

■ We agree with the court of appeals that Rule 17.4 requires that each defendant's plea agreement must be considered and accepted or rejected individually. It does not follow, however, that the court may not accept joint and contingent pleas. If the plea agreements are individually reviewed and found acceptable, the court may approve all of them. The court may also reject one or more of the plea agreements reached as part of the package deal. When the court rejects one of a series of contingent plea agreements, the rest must also fail. As Rule 17.4(a) provides, the state and defendant may negotiate on "any aspect of the disposition of the case." The power to negotiate under Rule 17.4(a) appears to us to be broad enough to allow such package or contingent plea agreements. We hold, therefore, that "package deal" plea agreements are not prohibited by Rule 17.4, Ariz.R.Crim.P., 17 A.R.S. or by U.S. and State Constitutions. *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir.1979); *State v. McInelly*, 146 Ariz. 161, 704 P.2d 291 (App.1985). *See also United States v. Castello*, 724 F.2d 813, 815 (9th Cir.1984); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir.1983); *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir.1982); *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir.1978); *In re Ibarra*, 34 Cal.3d 277, 193

Cal.Rptr. 538, 666 P.2d 980 (1983); *People v. Rodriguez*, 362 N.Y.S.2d 116, 79 Misc.2d 1002 (1974); *State ex rel. White v. Gray*, 57 Wis.2d 17, 203 N.W.2d 638 (1973).

Defendants also contend that contingent or "package deal" plea agreements violate public policy. The court of appeals agreed, stating:

We believe that "package-deal" plea bargains of the nature presently before us aggravate the disadvantages of the plea bargaining system to an unacceptable degree. Individual consideration and determination of a defendant's case is too greatly impeded.... Furthermore, when family members or spouses are involved the coercion of one in exchange for leniency to another thwarts the required voluntariness of the plea.

724 P.2d at 45. (citation omitted). The court of appeals then held that all "package deal" plea agreements are *per se* violative of public policy. *Id.* We do not agree.

This type of plea agreement can be beneficial to both the state and to the defendant as well as to the public. The California Supreme Court has noted as to the state that:

The "package-deal" may be a *valuable tool* to the prosecutor, who has a need for *all* defendants, or none, to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants. He is also placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy. Thus, the prosecutor's motivation for proposing a "package-deal" bargain may be strictly legitimate and free of extrinsic forces.

*In re Ibarra*, 34 Cal.3d 277, 289 n. 5, 193 Cal.Rptr. 538, 545 n. 5, 666 P.2d 980, 987 n. 5 (1983). (emphasis in original).

In the instant case, Richard Solano did not receive the maximum punishment provided for his crime and his wife was sentenced under a lesser charge. Vickie Hurst-Solano and Guy Lindstrom were allowed to plead guilty to a lesser offense—a "deal" that they both evidently believed was beneficial to them and to which their attorneys agreed. A defendant may find it beneficial to tie his plea to another. The defendant should have that option.

■ We note, however, that "package deal" plea agreements are fraught with danger and agree with the California Supreme Court that whenever a plea is taken pursuant to a "package deal" the trial court is required to conduct a careful inquiry into the totality of the circumstances surrounding the plea. *In re Ibarra*, 193 Cal.Rptr. at 544, 666 P.2d at 986. In conducting this inquiry, we adopt the factors listed in *In re Ibarra:* (1) whether the inducement to plead was proper, in that the prosecutor acted in good faith and had a reasonable case against any third party to whom leniency is promised, *see United States v. Nuckols, supra;* (2) whether there is a factual basis for the plea in terms of supportable evidence and proportionality of sentence; (3) whether the nature and degree of coercion and psychological pressure upon the defendant indicate the plea is involuntary; (4) whether the promise of leniency to another was a significant or insignificant concern to the defendant in his choice to plead guilty; and (5) whether any other relevant factor impermissibly influenced defendant's plea. 193 Cal.Rptr. at 544–545, 666 P.2d at 986–987.

■ In the instant case, it appears that the trial court carefully reviewed the plea bargains of each defendant before accepting them all and that the factors listed in *In re Ibarra, supra*, were met. The record indicates that 1) the prosecutor acted in good faith; 2) there was a factual basis for the pleas; 3) the pleas were voluntary; 4) the promise of leniency was of significant concern to each of the defendants and 5) no other facts impermissibly influenced the defendants to plead guilty.

The opinion of the court of appeals is vacated and the sentences imposed by the trial court affirmed.

HOLOHAN, C.J., and HAYS, J., concur.

GORDON, Vice Chief Justice, dissenting.

I respectfully dissent. It has long been established that pleas obtained through "coercion, terror, inducements, and subtle or blatant threats" are involuntary and violative of due process. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). The constitutional status of guilty pleas induced by offers of adverse or lenient treatment to a person other than the accused presents a serious problem. *Bordenkircher v. Hayes,* 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978). These pleas pose a greater danger of coercion than purely bilateral plea bargaining, *U.S. v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979), and present a greater danger of inducing a false guilty plea by skewing the assessment of risks a defendant must consider. *Bordenkircher v. Hayes,* 434 U.S. at 364 n. 8, 98 S.Ct. at 668 n. 8. *See also Brady v. U.S.,* 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970) (the agents of the state may not produce a plea by actual or threatened physical harm or by mental coercion overwhelming the will of the defendant).

While I realize that a criminal defendant has no right to a plea bargain, *State v. Morse,* 127 Ariz. 25, 617 P.2d 1141 (1980), this does not mean the rules of the plea bargaining process should be further expanded to enhance the prosecutor's great discretionary power. Plea bargaining should not be reduced to a shameful imitation of a midday game show, where a deal is struck only when "the price is right" with no knowledge of what's behind door number three.

In the present case the situation required the trial court to accept or reject in toto three plea agreements all contingent upon each other, two of which involved a husband and wife. These "package deals" make the job of the trial court geometrically more difficult than if it were simply reviewing three "non-package deals". Not only must the trial court determine that Rule 17 is satisfied and that the voluntariness requirement of *Boykin v. Alabama* is met, but it must then review the pleas in relation to each other for fear that the entire package may unravel. I believe this practice places too much pressure on the trial court to accept a package deal because of the possibility of a domino effect. The criminal justice system in the United States under our constitution is distinguished from all others in the world in that in this country each accused is accorded individual attention and treatment at all stages of the criminal prosecution. At no time does he become an average person or a member of a group. He is to be treated at all times as that distinct human being that he is. If we tie people together in a plea bargain package, however attractive the wrapping or the ribbon, we detract from the individuality of the persons involved, and force the trial judge to determine whether the end justifies the means. In these days of overcrowded calendars, it is unrealistic to believe that a harried trial judge would not be tempted to yield to a slightly unfair package in order to reduce his case load. This is simply not a desirable procedure and is designed solely to put undue leverage on the defendants and trial court.

The majority opinion illustrates that the trial court felt powerless in this situation, even after expressing concern that the sentences of two of the three defendants were possibly not justified. I agree with the majority of the court of appeals which would invalidate package deals. While such deals may not be so offensive to be declared unconstitutional per se, we should not be required to stretch our rules of criminal procedure to their absolute breaking point. As the majority points out at p. 21, "package deal plea agreements are fraught with danger". If they are, why should we encourage parties to travel down this treacherous path and establish such an elaborate and subjective five factor test?

In *State v. McInelly,* 146 Ariz. 161, 704 P.2d 291 (App.1985), Division Two of the court of appeals upheld package deal pleas in an opinion totally bereft of any analysis or supporting authority. Division One in *State v. Solano,* 150 Ariz. 423, 724 P.2d

42 (App.1985), analyzed these pleas on both public policy grounds and pursuant to our rules of criminal procedure. I would adopt that well-reasoned opinion. In particular, when large numbers of family members are involved in such pleas I seriously question whether an accurate assessment of voluntariness can be made and believe the pressure on the trial court to accept all of the contingent pleas will be overwhelming. To believe otherwise is to ignore human experience and the strength of family bonds. *See People v. Smith*, 37 Mich.App. 264, 194 N.W.2d 561 (1971) ("it does not follow that bargaining regarding the fate of a member of defendant's family does not constitute coercion"). I would disallow the use of package deals in all cases.

FELDMAN, Justice.

I concur in Vice Chief Justice Gordon's dissent.