761 P.2d 728
**STATE of Arizona, Appellee,**

v.

**Jerry HORNING, Appellant.**

**No. 1 CA–CR 10839.**

Court of Appeals of Arizona,
Division 1, Department B.

March 17, 1988.

Reconsideration Denied April 29, 1988.

Review Denied Oct. 12, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Frost and Porter by G. Terris Porter, Show Low, for appellant.

## OPINION

FIDEL, Judge.

In *State v. Solano*, 150 Ariz. 398, 724 P.2d 17 (1986), three members of a divided supreme court rejected the dissenters' blanket disapproval of "package deal" plea agreements. The majority acknowledged, however, that such pleas are "fraught with danger" and, in every instance, require the trial court's "careful inquiry into the totality of the circumstances surrounding the plea." 150 Ariz. at 402, 724 P.2d at 21. In the case before us the defendant, Jerry Horning, entered a plea agreement induced, at least in part, by (1) a concrete arrangement with the state for more lenient treatment of his co-defendant wife and (2) the state's employment of the possibility of defendant's pre-sentence jailhouse conjugal access to his wife. This plea

agreement, in our view, fails scrutiny under *Solano* for reasons we set forth below.

### The Plea Agreements of Defendant and His Wife

In October of 1985 the defendant Jerry Horning, unable to make bail since his arrest in August of 1984, was an inmate in the Navajo County Jail. Horning awaited trial on eight separate charges of felonious conduct toward his own children. In Cause No. 8325, he was charged with one count of child molestation and six counts of child abuse. In Cause No. 8342 he was charged with one count of sexual conduct with a minor. His wife, Linda Horning, released on her own recognizance, was indicted as a co-defendant on all but the child molestation count. The state sought sentence enhancement against both defendants in the event of convictions on multiple counts, pursuant to A.R.S. § 13–604(H) and *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

On October 15, 1985, Linda Horning entered an initial plea agreement, pleading guilty in Cause No. 8342 to sexual conduct with a minor, a class two felony, and in Cause No. 8325 to two counts of child abuse, class four felonies. The state agreed that she would receive concurrent sentences on the three counts, that it would make no sentencing recommendation, and that it would dismiss the other charges against her. This plea agreement was soon vacated, however, and Linda was extended a more lenient agreement as an inducement for her husband's entry of the plea that is the subject of this appeal.

On October 22, 1985, Jerry Horning pled guilty to the charge of child molestation in Cause No. 8325 and to the charge of sexual conduct with a minor in Cause No. 8342. Both were class two felonies. There was no stipulation as to sentence, but the county attorney agreed to make no recommendation on the subject. Significant for purposes of this appeal were the following terms of the agreement:

> Co-defendant, Linda Horning, shall be entitled to withdraw from her previous plea agreement and enter into a new plea agreement to be entered at the same time as entry of this defendant's plea under this agreement.

> The County Attorney's Office shall take no position with regard to any conjugal visit between defendant and his co-defendant, Linda Horning, and shall leave such matter to the Navajo County Sheriff.

Linda Horning simultaneously entered a new plea agreement, which differed from the first in the following respects:

1. In the second agreement Linda pled guilty only to two counts of child abuse, both class four felonies. In the first agreement, she had pled guilty to those counts, but additionally to one count of sexual conduct with a minor, a class two felony.

2. In the second agreement, Linda was subject to consecutive sentences. In the first agreement, all sentences were to run concurrently. Nevertheless, Linda reduced her sentencing exposure by entering the second agreement. Her initial agreement to plead guilty to sexual conduct with a minor in 1984 had rendered her ineligible for probation and had subjected her to a maximum, aggravated sentence of fourteen years of imprisonment on that charge. A.R.S. §§ 13–1405, (amended in 1985 to require sentencing under the newly enacted A.R.S. § 13–604.01), 13–701, 13–702. The dismissal of the sexual conduct charge pursuant to the second plea agreement left her eligible for probation, within the discretion of the sentencing judge, and susceptible to a maximum ten year prison term in the event of consecutive maximum five year sentences on each of the class four counts. A.R.S. §§ 13–3623(C), 13–701, 13–702.

The plea agreements of the Hornings were entered on October 21, 1985, but deferred for acceptance until the date of sentencing, November 19, 1985. Linda Horning received two consecutive aggravated five year sentences; Jerry Horning received two consecutive aggravated fourteen year sentences. His appeal primarily challenges the voluntariness of his plea. Linda Horning is not a party to this appeal.

### The Application of Solano

In *Solano* our supreme court called for careful inquiry into the voluntariness of each individual plea within a "package deal" plea agreement. Citing the California Supreme Court's decision in *In re Ibarra*, 34 Cal.3d 277, 288–290, 193 Cal.Rptr. 538, 544–545, 666 P.2d 980, 986–987 (1983), the court listed five factors pertinent to such inquiry:

(1) whether the inducement to plead was proper, in that the prosecutor acted in good faith and had a reasonable case against any third party to whom leniency is promised ...; (2) whether there is a factual basis for the plea in terms of supportable evidence and proportionality of sentence; (3) whether the nature and degree of coercion and psychological pressure upon the defendant indicate the plea is involuntary; (4) whether the promise of leniency to another was a significant or insignificant concern to the defendant in his choice to plead guilty; and (5) whether any other relevant factor impermissibly influenced defendant's plea.

*Solano*, 150 Ariz. at 402, 724 P.2d at 21; *see also State v. Tietjens*, 151 Ariz. 560, 729 P.2d 914 (1986).

The state argues that, because the supreme court decided *Solano* after the defendant's plea was entered, its decision should be confined to prospective application. We disagree for two reasons.

First, *Solano's* specification of five areas of close scrutiny does not evoke retroactivity/prospectivity analysis. The supreme court broke no new ground. Package plea agreements, like all plea agreements, were subject to voluntariness inquiry before *Solano* and remain so in its wake; the supreme court's *Solano* decision simply mandates that the inquiry be a close one and lists a set of pertinent factors.

Second, even if retroactivity/prospectivity analysis were appropriate and *Solano* confined to prospective application, it would nonetheless apply to cases such as this one pending when it issued. Mr. Horning is entitled to have his appeal decided in accordance with "the law prevailing at the time of the appellate disposition." *State v. LeMaster*, 137 Ariz. 159, 168, 669 P.2d 592, 601 (App.1983); *State v. Crowder*, 747 P.2d 1176, 1177 (Ariz.1987); *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987). In short, *Solano* applies.

The state next attacks *Solano* scrutiny as inappropriate because, it claims, the Hornings' pleas were not a "package deal." Neither plea was expressly made contingent upon the entry and acceptance of the other, and the state contends that such contingency is the hallmark of the "package deal." Defendant responds that the absence of express contingency was inconsequential. Defendant's plea not only included the express condition that his wife be extended the opportunity to enter her new plea; it also included the requirement that the Hornings' pleas be entered "at the same time." Though Linda's plea was entered immediately before her husband's, the trial judge deferred acceptance of both pleas until the date of sentencing. Defendant suggests that the state would have been entitled to withdraw from his wife's more lenient plea if the defendant had reneged on his own.

We need not decide whether these pleas were in fact contingent, because we regard the state's focus on contingency as misplaced. The pleas considered in *Solano*, *Tietjens*, and *Ibarra* were indeed contingent package pleas, in that the state made its participation in each package expressly contingent upon the entry and acceptance of every component plea. Those courts, however, did not fix scrutiny on the element of contingency, but rather on the element of inducement. The Supreme Court of California explained in *Ibarra*:

Extraneous factors not related to the case or the prosecutor's business may be brought into play. For example a defendant may fear that his wife will be prosecuted and convicted if he does not plead guilty; or, a defendant may fear, as alleged in this case, that his codefendant will attack him if he does not plead guilty. Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special

scrutiny must be employed to insure a voluntary plea. "[P]lea bargaining of adverse or lenient treatment for some person *other* than the accused ... might pose a greater danger of inducing a false guilty plea...." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, n. 8, 98 S.Ct. 663, 668, n. 8, 54 L.Ed.2d 604, 611, n. 8 (1978).

34 Cal.3d at 287, 193 Cal.Rptr. at 544, 666 P.2d at 986.

A number of cases cited in *Ibarra* in support of that court's cautionary approach to package pleas did not involve mutually contingent component pleas, but did involve allegations of improper plea coercion through threats of third party jeopardy or offers of third party leniency. *See, e.g., State ex rel. White v. Gray,* 57 Wis.2d 17, 203 N.W.2d 638 (1973) (remanded for trial court scrutiny of psychological pressures of plea bargain in which charges were dropped against co-defendant brother upon defendant's entry of a guilty plea); *United States v. Nuckols,* 606 F.2d 566 (Tex. 5th Cir.1979) (remanded to ascertain the voluntariness of a plea agreement allegedly induced by the prosecutor's threat "to prosecute appellant's wife if he fought the case"); *Johnson v. Wilson,* 371 F.2d 911 (9th Cir.1967) (remanded for voluntariness hearing upon appellant's allegation that his plea was coerced by threats that his "pregnant wife would be charged with a narcotics offense and that his infant daughter would be turned over to the juvenile authorities"); *United States v. Glass,* 317 F.2d 200 (4th Cir.1963) (voluntariness hearing warranted by appellant's allegation that his guilty plea was improperly induced by a promise that his female companion at the time of arrest "would be released from custody without being charged as an accessory to crimes committed.")

We conclude that the significant issue in this case is not whether Jerry Horning's plea was tethered to his wife's by a contingent acceptance requirement; the issue, rather, is whether his plea was improperly induced. The *Solano–Ibarra* factors are not confined in application to pleas that are components of contingent package deals; they are pertinent whenever a court must determine whether a defendant's plea was coerced by threats of jeopardy or promises of leniency to a third party.

*Leniency to Wife as Factor of Inducement*

Among the areas of inquiry listed in *Solano* was "whether the promise of leniency to another was a significant or insignificant concern to the defendant in his choice to plead guilty." 150 Ariz. at 402, 724 P.2d at 21. In *Tietjens,* following *Solano,* our supreme court pointed out in affirming a package deal plea that "defendant's plea was not coerced by promises of leniency to a third party." 151 Ariz. at 562, 729 P.2d at 916. The Supreme Court of California explained why such inquiry is warranted:

Psychological pressures sufficient to indicate an involuntary plea might be present if the third party promised leniency is a close friend or family member whom the defendant feels compelled to help. "[T]he voluntariness of a plea bargain which contemplates special concessions to another—*especially a sibling or a loved one*—bears particular scrutiny by a trial or reviewing court conscious of the psychological pressures upon an accused such a situation creates. *State ex rel. White v. Gray, supra,* 203 N.W.2d 638, 644.

*Ibarra,* 34 Cal.3d at 289, 193 Cal.Rptr. at 545, 666 P.2d at 987 (emphasis added).

The presence of leniency to a third party as a consideration in a defendant's plea agreement is not necessarily fatal to the agreement. The court must consider whether such leniency served as a "substantial" or "significant" factor in the defendant's decision. *Id.; Solano,* 150 Ariz. at 402, 724 P.2d at 21. Such inquiry is conducted by the trial court initially, upon taking of the plea, or upon remand if a reviewing court cannot conclude that third party leniency did not serve as a coercive factor to the plea. *See, e.g., State ex rel. White v. Gray,* 57 Wis.2d 17, 203 N.W.2d 638 (1973). Here, however, it is apparent from the nature of the Hornings' bargains that leniency toward Linda Horning was a

substantial factor in defendant's plea. The state, having already secured a harsher bargain with the wife, had no reason to extend her a more lenient one unless such leniency were necessary to extract her husband's plea.

Indeed, missing in this case is a legitimatizing factor cited by our supreme court in quotation from *Ibarra:*

> The "package deal" may be a *valuable tool* to the prosecutor, who has a need for *all* defendants, or none, to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants. He is also placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy. Thus, the prosecutor's motivation for proposing a "package-deal" bargain may be strictly legitimate and free of extrinsic forces. *In re Ibarra,* 34 Cal.3d 277, 289 n. 5, 193 Cal.Rptr. 538, 545 n. 5, 666 P.2d 980, 987 n. 5 (1983) (Emphasis in original).

*Solano,* 150 Ariz. at 402, 724 P.2d at 21.

Here, the state had no such need "for all defendants, or none, to plead guilty;" it had manifested, through its initial plea agreement with Linda Horning, its willingness to take her plea alone. Yet it gave her a new and better plea to gain that of her husband. The substantiality of leniency toward Linda as a factor of inducement in defendant's plea stands out with starkness in this case.

### Conjugal Access as a Factor of Inducement

An offer of leniency to defendant's wife, as we have indicated, was employed by the state as a substantial and deliberate factor of inducement to defendant's plea. The question follows whether this factor standing alone would warrant setting aside the judgment or only remanding the case for hearing into the "totality of circumstances." This question we need not answer, because a further factor of inducement

clearly requires that the judgment of guilty be set aside.

The state agreed, as an express condition of the defendant's plea agreement, to refrain from opposing his effort to obtain a conjugal jail visit with his wife. The state does not deny that this "non-interference clause" was a significant factor in defendant's plea. Indeed, the state touts it in its brief as one of the benefits of defendant's bargain.

Defendant argues, "Allowing the state to leverage the strong, though short-term needs of a defendant for sex with his wife by manipulating conjugal visits in order to coerce a plea agreement is extremely inappropriate public policy." We agree.

It is generally established that "[t]he state is under no constitutional obligation to create ... a sanctum [of marital privacy] within the prison walls." *McGinnis v. Stevens,* 543 P.2d 1221, 1238 (Alaska 1975). Penal officials have "broad latitude" in regulating sexual visitation "in light of recognized penological goals of deterrence, rehabilitation and institutional security." *Imprisoned Citizens Union v. Shapp,* 451 F.Supp. 893, 895, (E.D.Pa.1978); *see also* Annot., *State Regulation of Conjugal or Overnight Familial Visits in Penal or Correctional Institutions,* 29 A.L.R. 4th 1216 (1984).

■ That penal authorities may restrict sexual visitation, however, is not to say that prosecutors may use it as a bargaining chip. We are not prepared to say that the prosecution may never take a position on a question of conjugal visitation by an incarcerated defendant awaiting trial. That question is not presented by this case. We hold, however, that the state may never employ conjugal access as a factor of inducement to a guilty plea. While a defendant's short-term interest in such access may be powerful, it is a manifestly irrational basis for embracing the long-term consequences of a guilty plea. Its presence in a plea agreement demonstrates, *ipso facto,* a "degree of coercion and psychological pressure upon the defendant" that renders his plea involuntary. *Solano,* 150 Ariz. at 402, 724 P.2d at 21.

*Disposition*

Finding that defendant involuntarily entered his plea agreement in response to inappropriately coercive factors of inducement, we vacate his judgment and sentence and remand this matter for proceedings before the trial court, where defendant shall be given an opportuntity to withdraw his guilty plea. In the event that the defendant chooses to withdraw his plea, the court shall reinstate the original charges.

CONTRERAS, P.J., and GREER, J., concur.