# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 13, 2008

135247 & (26)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

BRIAN LAMORAND,
      Defendant-Appellant.

SC: 135247
COA: 279776
Macomb CC: 2006-002343-FH

_____/

On May 14, 2008, the Court heard oral argument on the application for leave to appeal the September 17, 2007 order of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(G)(1). In lieu of granting leave to appeal, we REVERSE the Macomb Circuit Court's order denying the defendant's motion to withdraw his plea and REMAND this case to the Macomb Circuit Court for further proceedings not inconsistent with this order. At the plea hearing, there was an insufficient factual basis to support a plea of guilty to maintaining a drug house, MCL 333.7405(1)(d). Contrary to the prosecutor's argument, this issue was adequately preserved under MCR 6.310(D) when the defendant argued with respect to his motion to withdraw that the factual basis was insufficient, and the trial court denied the motion. The motion to strike is DENIED.

KELLY, J., concurs and states as follows:

I concur in the decision to allow defendant to withdraw his plea. But my reasoning differs from that of my colleagues. I would adopt the test set forth by the California Supreme Court in *In re Ibarra*.[1] This test requires trial courts to consider certain factors before accepting a guilty plea rendered as part of a "package deal" plea agreement. Because the trial court in this case never considered these factors, I would allow defendant to withdraw his guilty plea.

_____

[1] *In re Ibarra*, 34 Cal 3d 277 (1983).

FACTS

In February 2006, a fire destroyed the home of Mary and David Cunningham. Mary is defendant Brian Lamorand's mother. She is also the mother of Roger Lamorand and the stepmother of Michael Tooman. David is the father of Michael Tooman and the stepfather of defendant and Roger.

Firefighters battling the blaze found marijuana growing in the home. After an investigation, the prosecutor charged each family member, Mary, David, Roger, Michael and defendant, with manufacturing marijuana, a felony.[2]

Roger pleaded guilty of manufacturing marijuana. His conviction was deferred under the Holmes Youthful Trainee Act.[3] The prosecutor offered to allow each of the other family members to plead guilty of maintaining a drug house, a misdemeanor.[4] The offer provided that, if any one of the family members declined the offer, it would be available to none of them.

A joint plea hearing was conducted. At the hearing, defendant, along with the others in the family, pleaded guilty of maintaining a drug house. The trial court accepted all the guilty pleas.

But before sentencing, defendant moved to withdraw his plea, arguing that the plea offer had been coercive because, if he had not accepted it, his family would have faced more serious charges. He also argued that he was innocent of the crime. Defendant admitted that his driver's license showed the family home as his address and that he received mail there. But he claimed that he did not live at the home. The trial court denied the motion. Later, defendant was ordered to pay $1000 in costs but was not sentenced to incarceration or probation.

After sentencing, defendant again moved to withdraw his plea. He offered evidence in the form of letters from his employer, neighbors, family, and friends stating that defendant did not live at the family home and was not involved with drugs.[5] The trial court again denied the motion. The Court of Appeals denied defendant's application

---

[2] MCL 333.7401(2)(d)(iii).

[3] MCL 762.11 *et seq*.

[4] MCL 333.7405(1)(d); MCL 333.7406.

[5] There are 10 letters. They tend to show that defendant (1) had not lived in the home for at least six months, (2) had his own apartment, (3) was a good employee, and (4) was not involved with drugs. Included among the letters is one from a codefendant, Mary Cunningham, exonerating defendant of the crime.

for leave to appeal for lack of merit in the grounds presented.  We scheduled oral argument on defendant's application for leave to appeal.[6]

## THE *IBARRA* DECISION

In *Ibarra*, it was alleged that the petitioner participated in an armed robbery. Initially, he was charged with robbery by use of a firearm and six counts of assault with intent to commit murder.  The prosecutor made a package-deal plea offer to defendant and his two codefendants, which required all three men to plead guilty of robbery while armed and assault with a deadly weapon.  In exchange for their guilty pleas, the men would be sentenced to a five-year term of imprisonment.  This sentence was considerably lower than the maximum the men could have received if convicted as charged.  The accused accepted the package deal and pleaded guilty.  Thereafter, petitioner sought a writ of habeas corpus, arguing that the package deal was coercive.  He claimed that he was innocent and had pleaded guilty only from fear that the other men would harm him if he did not accept the package-deal offer.

The California Supreme Court concluded that package deals are not intrinsically coercive,[7] but a given package deal might be coercive depending on the facts of the case.[8] It explained:

> 'Package-deal' plea bargains . . . may approach the line of unreasonableness. Extraneous factors not related to the case or the prosecutor's business may be brought into play. For example, a defendant may fear that his wife will be prosecuted and convicted if he does not plead guilty; or, a defendant may fear, as alleged in this case, that his codefendant will attack him if he does not plead guilty. Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special scrutiny must be employed to ensure a voluntary plea . . . .[9]

The California Supreme Court decided that the only way to ensure that defendants were not coerced by package deals into pleading guilty was to impose a new duty on trial courts.[10]  In those cases involving package-deal plea agreements, it concluded, the trial

---

[6] *People v Lamorand*, 480 Mich 1111 (2008).

[7] *Id.* at 286.

[8] *Id.* at 286-287.

[9] *Id.* at 287.

[10] *Id.* at 288.

court must conduct an inquiry into the totality of the circumstances surrounding the agreement before deciding whether to accept the plea.[11]

The California Supreme Court directed trial courts to consider the following factors: (1) The inducement for the plea. The likelihood of coercion is greater if the prosecutor misrepresents facts to the party promised leniency or does not have a good-faith case against him or her.[12] (2) The factual basis for the plea. If the facts show that the defendant is not guilty or has a reasonable defense, it is less likely that the plea is the product of the defendant's free will.[13] (3) The nature and degree of coerciveness. If the party promised leniency is a close friend or family member whom the defendant feels compelled to help, the pressure may be sufficient to create an involuntary plea.[14] Impermissible coercion possibly exists, also, if a third party threatened harm to the defendant or a loved one in the event the defendant does not plead guilty. (4) Whether the promise of leniency to a third party is a significant consideration in the defendant's choice to plead guilty.[15] In those cases where the evidence against the defendant is overwhelming, the promise of leniency likely plays a lesser role in the decision to plead guilty.[16] (5) Other relevant factors including the age of the defendant, which party initiated the plea negotiations, and whether a third party was charged first.[17]

## CONCLUSION

The Alaska, Arizona, and Minnesota supreme courts have adopted the *Ibarra* holding.[18] They have opined that the *Ibarra* factors must be considered before it can be determined that a defendant's plea is voluntary and not coerced by the pressures that accompany package-deal plea agreements. Michigan should join the California, Alaska, Arizona, and Minnesota courts in adopting *Ibarra.* It is because no consideration was given to the *Ibarra* factors when the court accepted defendant's plea that I agree with the decision to allow defendant to withdraw his plea.

---

[11] *Id.*

[12] *Id.* at 288-289.

[13] *Id.* at 289.

[14] *Id.*

[15] *Id*. at 290.

[16] *Id.* at 289-290.

[17] *Id.* at 290.

[18] See *Resek v State*, 715 P2d 1188, 1191 n2 (Alas, 1986); *State v Solano*, 150 Ariz 398, 402 (Ariz, 1986); *State v Danh*, 516 NW2d 539, 542-543 (Minn, 1994).

I recognize that adoption of this test will increase the burden on trial courts. But I believe that this is both necessary and appropriate. By considering the *Ibarra* factors, courts can find a middle ground. Prosecutors can continue to use the valuable tool[19] of package-deal plea agreements, and those accused can be protected in accordance with their constitutional rights from unlawful coercion to plead guilty.[20]

WEAVER, J., dissents and states as follows:

I dissent from the majority's order to reverse and remand. I would deny leave to appeal because I am not persuaded that the decision of the Court of Appeals to deny leave was clearly erroneous or that defendant has suffered any injustice in this case.

CORRIGAN, J., dissents and states as follows:

I dissent from the order reversing the Court of Appeals and remanding the case to the Macomb Circuit Court. The order reverses and remands on the basis of the majority's conclusion that an insufficient factual basis existed to support defendant's guilty plea to a charge of maintaining a drug house. This ground for reversal was not briefed in any court — not in the trial court, the Court of Appeals, or the Supreme Court. Although defendant briefly stated at the hearing on his motion to withdraw the plea that the plea lacked a sufficient factual basis, the circuit court did not rule on this issue. I believe that the issue was not preserved for appeal. *Fast Air, Inc v Knight*, 235 Mich App 541, 549 (1999).

At the plea taking of all five codefendants on June 12, 2006, defendant testified as follows:

---

[19] As the *Ibarra* Court recognized, I acknowledge that

> the "package-deal" may be a valuable tool to the prosecutor, who has a need for all defendants, or none, to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants. He is also placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy. Thus, the prosecutor's motivation for proposing a "package-deal" bargain may be strictly legitimate and free of extrinsic forces. [*Ibarra*, 34 Cal 3d at 289 n 5 (emphasis omitted).]

[20] E.g., *Henderson v Morgan*, 426 US 637, 644-645 (1976) ("a plea cannot support a judgment of guilt unless it [i]s voluntary in a constitutional sense.").

> *The Court*:  Brian Lamorand, tell the Court what it is you did on or about February 18, 2006 in the Township of Clinton.  What did you do?
>
> *The Defendant*:  I kept my driver's license at 35618 Rutherford where marijuana was kept.
>
> *The Court*:  And the purpose of that residence at least in part was to be maintained for the maintaining of the marijuana.
>
> *The Defendant*:  Yes.
>
> *The Court:*  Any questions?
>
> *The Prosecutor:*  I'm satisfied.
>
> *The Court:*  Has the Court complied with MCR 6.302?
>
> *The Defense Counsel:*  Yes, you have.
>
> *The Prosecutor:*  Yes.
>
> *The Court*:  Then to the charge of maintaining a drug house, how is it you wish to plead?
>
> *The Defendant*:  Guilty.
>
> *The Court*:  The Court's going to accept your plea.

Thus defense counsel and the prosecutor agreed that the factual basis satisfied MCR 6.302.

Defendant and his family members were scheduled to be sentenced together.  On the date of sentencing, defendant sought a one-week adjournment to discuss the conditions of his plea.  One week later, on July 31, 2006, he moved to withdraw his plea under MCR 6.311 on grounds of coercion, claiming his innocence.  Nowhere in that motion did defendant claim that the factual basis was insufficient.  Defendant's claim of coercion is the only basis on which this case has been litigated in all courts until today.

At a minimum, defendant's brief comment at the hearing on the motion to withdraw the plea does not satisfy MCR 6.311(C):

> Preservation of Issues.  A defendant convicted on the basis of a plea may not raise on appeal any claim of noncompliance with the requirements of the rules in this subchapter, or any other claim that the plea was not an understanding, voluntary, or accurate one, *unless the defendant has moved to withdraw the plea in the trial court, raising as a basis for withdrawal the claim sought to be raised on appeal*.  [Emphasis added.]

Nor does it constitute "'rais[ing] objections at a time when the trial court has an opportunity to correct the error . . . .'"  *People v Pipes*, 475 Mich 267, 277 (2006), quoting *People v Grant*, 445 Mich 535, 551 (1994).

Moreover, when a court determines that the prosecutor has failed to establish a sufficient factual basis for the plea, the proper remedy is not reversal of defendant's conviction. Rather, on remand the prosecution may supplement the record to cure any defect in the plea proceedings. *People v Kedo*, 108 Mich App 310, 313 (1981). The defendant may only withdraw his plea if he controverts the supplementation. *Id.* at 314.

The parties did not brief the factual-basis question for this Court. In fact, the suggestion that an insufficient factual basis existed for defendant's guilty plea was not raised in this Court until oral argument. The prosecutor did not concede this point. I believe that the Court should request supplemental briefing from the parties before concluding that defendant's plea lacked a sufficient factual basis.

This is a court of review. In the absence of a proper opportunity to brief the issue on which we are reversing, I dissent from the court's order.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 13, 2008

_____
Clerk