**Donald Asa HARMAN, Appellant,**

v.

**Richard MOHN, Superintendent, Appellee.**

**No. 81–6184.**

United States Court of Appeals, Fourth Circuit.

Argued March 30, 1982.

Decided July 7, 1982.

---

John Preston Bailey, Wheeling, W. Va. (Bailey, Byrum & Vieweg, Wheeling, W. Va., on brief), for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Atty. Gen., Richard S. Glaser, Jr., Asst. Atty. Gen., Charleston, W. Va., on brief), for appellee.

Before PHILLIPS, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

The plaintiff seeks a writ of habeas corpus under 28 U.S.C. § 2254 claiming that his plea of guilty to a sexual battery[1] charge in 1975 in Mahoning County, Ohio was coerced and should be set aside, because the state prosecutor, as a part of the plea bargain, agreed to dismiss a pending indictment against plaintiff's wife for aiding and abetting in connection with the original rape charge. Harman asks this court to reject the district court's application of a "good faith" standard for use in this type of plea bargain and instead to adopt a rule that plea bargains involving the rights of third persons are per se coercive and outside the proper parameters of the plea bargaining process. We reject the appellant's request and affirm the district court's denial of the great writ.

When Donald Asa Harman was convicted of breaking and entering in the Circuit Court of Randolph County, West Virginia in September 1978, the prosecuting attorney filed an information pursuant to the West Virginia Habitual Criminal Act (W.Va.Code §§ 61–11–18 and 19) informing the court of Harman's two previous felony convictions. Proceedings under the Habitual Criminal Act resulted in Harman being sentenced to a term of life imprisonment.

Harman now contends that one of the prior felonies used to enhance his sentence under the West Virginia Habitual Criminal

---

1. The original charge was rape.

Act should be set aside because his plea of guilty was coerced. On February 28, 1975, Harman was indicted for rape in Mahoning County, Ohio, and his wife, Barbara Harman, was indicted for aiding and abetting in the commission of the rape. The guilty plea was taken on April 29, 1975 at which time Harman was represented by one Thomas E. Zena. Plaintiff was originally represented by John A. McNalley, III, but plaintiff discharged McNalley for allegedly moving for a change of venue on the eighty-ninth day after Harman's arrest, which had the effect of tolling the running of the Ohio Speedy Trial Statute, which required that a criminal defendant in custody be tried within 90 days after his arrest. Harman testified that on the morning his rape charge was set for trial he was advised of the prosecutor's offer of a plea bargain which included his plea of guilty to the lesser included offense of sexual battery, the dismissal of the indictment against his wife, that he would not be prosecuted on a bad check charge arising out of his purchase of a firearm and that the state authorities would not inform the federal authorities that Harman had executed a false statement in connection with the purchase of the firearm (a violation of the Gun Control Act because he was a convicted felon). He further testified that the prosecutor had warned that Harman's child would be taken from him and his wife if he did not enter a guilty plea. Plaintiff further alleges that it was a part of the plea agreement that he would receive "shock probation", which appears to be a state procedure similar to a split-sentence in the federal courts, whereby the guilty party is confined for six months and then placed on probation.

After the present action was brought, it was referred to the United States Magistrate for the Northern District of West Virginia, who conducted a hearing at which Harman, Michael P. Rich, the assistant prosecuting attorney who handled the Ohio case, and Attorney Thomas E. Zena all testified. No testimony was taken from plaintiff's first attorney McNalley, because plaintiff did not advise the court or the defendant that he was claiming ineffective assistance of counsel on the part of Mr. McNalley until he arrived at the hearing before the magistrate. McNalley practices law in another state and the magistrate held that by waiting until the hearing to assert this claim, after the magistrate and supporting court personnel and other witnesses had traveled long distances to the hearing and prepared to deal with the issues originally raised, the plaintiff had waived his right to a consideration of the claims against McNalley in this proceeding.

Additionally the magistrate found that the dismissal of the pending indictment against Harman's wife was one of several elements in the plea bargaining, that the fate of Harman's child was not an element in the plea bargain agreement, that there was no promise of "shock probation", that plaintiff's attorney Zena did not help the prosecution in forcing a guilty plea, and that Harman had failed to prove his claim of ineffective representation by his attorney Zena.

The magistrate concluded that there was no constitutional infirmity in the proceedings leading up to the plea of guilty or in the plea itself in the Ohio case. These findings and conclusions were accepted and approved by the district court.

The appeal raises two questions: whether it is constitutionally permissible for a prosecutor to utilize lenient treatment of a third party as a tool in plea bargaining, and whether the district court erred in not deciding the merits of the claim of incompetent counsel alleged against Harman's first attorney McNalley.

## I.

No one questions the fact that as a condition of the plea bargain the prosecutor agreed to dismiss the indictment charging Harman's wife with aiding and abetting in the crime of rape. Plea bargaining is constitutionally permissible and is an important and valuable part of the criminal justice system. Without plea bargains the state and federal criminal courts would collapse under the burden of cases waiting the

time consuming jury selection and trial. The Supreme Court approved plea bargaining in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and found it to be "an essential component" of the criminal process and that it should be encouraged when properly administered. However, the Supreme Court has left open the question of plea bargains which involve third persons. In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) the court mentioned this problem without deciding it. See n.8 pg. 364, 98 S.Ct. n.8 pg. 668:

> This case does not involve the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused, see ALI Model Code of Pre-Arraignment Procedure, Commentary to § 350.3, pp. 614–615 (1975), which might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider. Cf. *Brady v. United States*, 397 U.S. 742, 758 [90 S.Ct. 1463, 1474, 25 L.Ed.2d 747.] (Emphasis in the original).

In *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979) the court noted that *Bordenkircher* had reserved judgment on this issue but stated:

> There seems to be a general consensus, with which we concur, that guilty pleas made in consideration of lenient treatment as against third persons pose a greater danger of coercion than purely bilateral plea bargaining, and that, accordingly, "special care must be taken to ascertain the voluntariness of guilty pleas entered in such circumstances." *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir. 1978). *See Crow v. United States*, 397 F.2d 284 (10th Cir. 1968); *Johnson v. Wilson*, 371 F.2d 911 (9th Cir. 1967). As a threshold matter, we see no intrinsic constitutional infirmity in broadening plea negotiations so as to permit third party beneficiaries. It is generally within a prosecutor's discretion merely to inform an accused that an implicated third person "will be brought to book if he does not plead [guilty].... If [an accused]

elects to sacrifice himself for such motives, that is his choice ..." *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959). Recognizing, however, that threats to prosecute third persons can carry leverage wholly unrelated to the validity of the underlying charge, we think that prosecutors who choose to use that technique must observe a high standard of good faith. Indeed, absent probable cause to believe that the third person has committed a crime, offering "concessions" as to him or her constitutes a species of fraud. At a minimum, we think that prosecutors may not induce guilty pleas by means of threats which, if carried out, would warrant ethical censure.

In the present case Mrs. Harman had already been indicted. Therefore the grand jury had already found probable cause to believe that she had aided and abetted in the crime. This is not the case of a threat by the prosecutor to indict and prosecute the wife of an accused without probable cause. The indictment had been returned and as one concession, but not the only concession, offered by the prosecutor to induce the plea, this indictment would be dismissed. This leniency to Harman's wife does not constitute the "species of fraud" mentioned in *Nuckols, supra*. There is nothing in this case to show that the prosecutor did not observe a high standard of good faith in negotiating the plea bargain with Harman and his attorney. Since Harman received several concessions from the prosecutor in addition to the dismissal of his wife's indictment, it is impossible to say which of the concessions persuaded the accused to enter his plea of guilty. However, even if the dismissal of his wife's indictment was the only inducement, Harman would not be entitled to relief, because Mrs. Harman was already under indictment, which is proof of probable cause, and there had been no showing that the prosecutor did not observe the high standard of good faith required in this type of plea bargain.

Fortunately, Mrs. Harman was represented by separate counsel, so there can be no

claim that an attorney sacrificed one client to free another.

 Plea bargains, which include adverse or lenient treatment for some person other than the accused, are not per se invalid, but these situations demand that prosecutors exercise a high standard of good faith in negotiating such pleas and that courts accepting such pleas examine them carefully to insure that the accused understands the plea agreement and the consequences not only to himself, but to such third persons as may be affected by the plea bargain. In the present case the prosecutor and the judge taking the plea met these standards.

## II.

 The district court was correct in finding that Harman had waived his right to have the court consider in this proceeding the merits of his claim of ineffective assistance of counsel on the part of his first attorney, John A. McNalley, III. In his petition for writ of habeas corpus under 28 U.S.C. § 2254, Harman made no claim against his first attorney, but grounds one and two in the petition both refer to attorney Zena, who was representing Harman at the time of his guilty plea. These two grounds allege that the court appointed counsel and the prosecutor forced Harman to plead guilty and that his court appointed counsel helped talk him into accepting the plea. From the allegations in the petition there is no way that the magistrate or the attorneys defending against the petition could know that Harman intended to claim ineffective assistance by his first attorney. Harman did not ask that McNalley be subpoenaed, and the respondent was not on notice of the claim so as to require McNalley to be in attendance. The district court was correct in finding a waiver in the present action as to any claim that McNalley's representation of Harman was constitutionally inadequate.

For the foregoing reasons the judgment of the district court is

AFFIRMED.