912 F.2d 464
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Saulo HERNANDEZ, Defendant-Appellant.
 No. 89-7725.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1990.
Decided Aug. 31, 1990.
As Amended Sept. 19, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge; Herbert N. Maletz, Senior District Judge. (CR-87-215 HAR)
 Arthur McKinley Reynolds, Jr., Washington, D.C., for appellant.
 E. Thomas Roberts, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Saulo Hernandez appeals the district court's denial of his motion to withdraw his guilty plea to a charge of conspiracy to distribute cocaine. Because we find no compelling reason to allow the defendant to withdraw his plea, we affirm the decision of the district court.
 
 I.
 
 2
 On May 13, 1987, Hernandez and several other individuals were charged with trafficking cocaine in a multiple count indictment. Claiming indigence, Hernandez received court appointed counsel to represent him, and his case was severed for a separate trial. On January 17, 1989, after the court had begun voir dire proceedings to select a jury, Hernandez decided to accept a plea agreement with the government. That same day, the district court conducted a Rule 11 proceeding during which Hernandez pled guilty to the first count in his indictment for conspiracy to distribute cocaine. Because Hernandez cannot speak or understand English, a certified translator was used in the proceedings. The stenographic transcript reflects only those statements made in English. Counsel for the defendant indicated on the record that the primary motivation for Hernandez's plea was to avoid the government's threat to indict his wife on similar charges. On March 14, 1989, the defendant was sentenced to 16 years in prison. On April 6, 1989, three weeks after sentencing, he filed a motion to withdraw his guilty plea. The district court denied the motion after a hearing on April 13.
 
 
 3
 On appeal, Hernandez presents five sets of arguments for reversing the district court's denial of his motion: (1) the sentence was imposed under the wrong statute; (2) his guilty plea was not voluntary because he did not have complete knowledge or understanding of the nature of the charge or the consequences of the plea; (3) the district court failed to establish an adequate factual basis for acceptance of the plea; (4) he was denied effective assistance of counsel during trial preparation and during the plea negotiations and proceedings; and (5) the stenographic record of the Rule 11 hearing was not a "verbatim record."
 
 II.
 
 4
 Because a guilty plea is a waiver of the right to trial, the plea must be a knowing and voluntary decision. McCarthy v. United States, 394 U.S. 459, 466 (1969). To this end, Rule 11 of the Federal Rules of Criminal Procedure requires the district court to conduct a hearing before accepting a guilty plea to determine whether the defendant (1) is free from unfair coercion, (2) understands the nature of the charges, and (3) knows the consequences of the plea. United States v. Dayton, 604 F.2d 931, 935 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904 (1980). If these requirements are not met, then the plea cannot be deemed a knowing and voluntary waiver of rights by the defendant.
 
 
 5
 A motion to withdraw a guilty plea made before sentencing may be granted for "any fair and just reason." Rule 32(d), Fed.R.Crim.P. However, a motion to withdraw a guilty plea made after sentencing, as is the case here, should only be granted to correct "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).[1] In reviewing the district court's decision to deny the motion to withdraw the guilty plea, we look for an abuse of discretion. United States v. Brown, 617 F.2d 54, 55 (4th Cir.1980).
 
 1. Applicable Statute
 
 6
 Hernandez pled guilty to a conspiracy to distribute cocaine that was alleged to have run from 1986 to May of 1987. As a result he was sentenced for a violation of 21 U.S.C. Sec. 846.[2] Congress amended this statute in 1986 to impose harsher penalties, such as mandatory minimum sentences and the exclusion from eligibility from parole of persons sentenced under Sec. 841. The district court sentenced the defendant under the amended statute (with the higher minimum sentences), and the defendant argues that the court should have used the older version with less severe penalties.
 
 
 7
 Hernandez argues that, although the amendments to the law were passed in 1986, the amendments were not effective until November 1, 1987, after the end of the conspiracy charged in the indictment. He bases his argument on a provision in Sec. 1004(b) of the Anti-Drug Abuse Act of 1986 concerning supervised release. Pub.L. No. 99-570, Sec. 1004(b). That clause defers the effective date of the "amendment made by this section" until November 1, 1987. A reading of the entire statute, however, reveals that the deferred effective date applies only to the supervised release provision and not to the other amendments. As a result, those amendments became effective when enacted in 1986, prior to the end of the conspiracy. United States v. Padilla, 869 F.2d 372, 382 (8th Cir.1989) ("We conclude that Sec. 1004(b) governs the effective date of Sec. 1004, while the rest of the Act, absent an express provision to the contrary, must be construed as effective on enactment.").
 
 2. Voluntary and Knowing Waiver
 
 8
 Hernandez asserts that his guilty plea was not a knowing and voluntary waiver of his right to a trial for several reasons. First, he contends that the plea agreement, the charge, and the consequences of his plea were not adequately explained to him. He has never been to school, cannot speak or understand English, cannot read or write in Spanish or any other language, and had never had significant dealings with the criminal justice system prior to this case. While Hernandez knew generally that he was being charged with "trafficking in cocaine," his counsel on appeal argues that the district judge did not personally ensure that he understood the elements of conspiracy or the "Pinkerton" theory that the government was using to implicate him.
 
 
 9
 Under Rule 11, Fed.R.Crim.P., the court may not accept a plea of guilty without first addressing the defendant personally and determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea. The district judge in this case asked the defendant personally if he understood the charge and if he was making the plea voluntarily. The defendant responded affirmatively to both questions. In addition, defense counsel indicated that he had gone over the charges and the plea agreement with Hernandez.
 
 
 10
 In Henderson v. Morgan, 426 U.S. 637, 644 (1978), the Supreme Court adopted a "totality of the circumstances" test to determine "whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused." The Court also indicated that a representation by defense counsel that the offense had been explained to the accused may be sufficient. Henderson, 426 U.S. at 647. When the record is viewed as a whole, it is clear that the trial court properly ascertained that Hernandez understood the essence of the charges against him, if not the technical details.
 
 
 11
 The defendant must also understand the consequences of pleading guilty in order to ensure that it is voluntary. Boykin v. Alabama, 395 U.S. 238 (1969). Hernandez argues that neither his attorney nor the trial judge adequately explained the plea agreement to him. He also complains that his attorney told him he would receive no more than eight years in prison if he pled guilty. Contrary to the defendant's assertions, the trial judge carefully explained to Hernandez the consequences of his plea agreement. The judge pointed out that he was giving up his right to a trial and that he could receive up to life imprisonment plus a fine at the sentencing. His own attorney emphasized on the record that Hernandez should understand he could receive a substantial prison sentence and that the government was going to recommend a sentence of 20 years. His attorney testified later that he never told the defendant he would receive no more than eight years. Hernandez may have believed he would receive no more than an eight year sentence, but the prosecutor, his defense attorney, the written plea agreement, and the explanation of the judge during the Rule 11 proceeding all indicate to the contrary. Based on this record, we cannot say that the district judge erred in finding that Hernandez was adequately informed of the consequences of his guilty plea.
 
 
 12
 Hernandez asserts that the government and his attorney erroneously told him during plea negotiations that any sentence would be "with parole" when, according to Hernandez, the statute indicates that he is not eligible for parole. He points to the recently amended statute providing that a defendant convicted under Sec. 841 is not eligible for parole. He argues that, as a result, he was misled about the consequences of pleading guilty. However, both the district court and the government agree that he is eligible for parole.
 
 
 13
 In Bifulco v. United States, 447 U.S. 381, 387 (1980), the Supreme Court held that the "special parole" provisions of Sec. 841 do not apply to a conviction for conspiracy under Sec. 846. The conspiracy statute, prior to 1988, authorized punishment by "imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. Sec. 846. The Court held that "special parole" was a distinct punishment from imprisonment and, under the "rule of lenity," it would not infer a Congressional intent to impose harsher punishment than was clearly stated in the statute.
 
 
 14
 Given the Supreme Court ruling in Bifulco, the government contends, and we agree, that the abolition of parole for convictions "under" Sec. 841 does not apply to the defendant's conspiracy conviction under Sec. 846. As we recently held in a related context, "[t]he only statutory restraint under Sec. 846 is that the sentence may not exceed the maximum prescribed for the substantive offense." United States v. Vinson, 886 F.2d 740 (4th Cir.1989) (holding that the statutory minimum sentences in Sec. 841 do not apply to convictions under Sec. 846).[3] As a result, Hernandez is subject to the longer sentence provisions contained in the 1986 amendments, but not to the provision denying eligibility from parole. Given that the defendant was correctly informed that he would be eligible for parole, we find no error.
 
 
 15
 As his final argument that his plea was not voluntary, Hernandez claims that he was unfairly coerced into the plea agreement. In general, a guilty plea cannot be accepted as voluntary where it was induced by force, coercion, or intimidation. Brady v. United States, 394 U.S. 742 (1970). Hernandez claims that he was pressured throughout by both his attorney and the prosecutor to plead guilty. Despite this pressure, he contends that he only agreed to the plea when the government suddenly threatened just before trial to indict his wife if he went ahead with the trial. His attorney noted this fact during the Rule 11 proceedings, and the plea agreement includes a promise by the government not to indict his wife. Hernandez contends that the government's threat impermissibly coerced him into pleading guilty.
 
 
 16
 An agreement not to prosecute a family member is permissible and does not constitute unfair coercion in and of itself. See Harman v. Mohn, 683 F.2d 834, 838 (4th Cir.1982). However, when the plea agreement is based in part on an agreement not to prosecute a third party, the trial court has a special responsibility to examine the agreement carefully to determine that the plea is voluntary and that the government is acting in good faith. Id. In another case involving a threat to indict the defendant's wife, the Fifth Circuit explained in United States v. Nuckols that:
 
 
 17
 There seems to be a general consensus, with which we concur, that guilty pleas made in consideration of lenient treatment as against third persons pose a greater danger of coercion than purely bilateral plea bargaining, and that, accordingly, "special care must be taken to ascertain the voluntariness of" guilty pleas entered in such circumstances.
 
 
 18
 606 F.2d 566, 569 (5th Cir.1979) (quoting United States v. Tursi, 576 F.2d 396, 398 (1st Cir.1978)).[4] In most cases, the agreement is valid providing that the government had a reasonable basis for warning the defendant that it might institute proceedings against a third party.
 
 
 19
 Bearing in mind the potential for unfair coercion, we find nothing to suggest any impropriety by the government in this case. Both the government and the defendant informed the judge that the plea bargain was based in part on an agreement not to proceed against the defendant's wife, and nothing in the record or in the briefs suggests that the government did not have probable cause. When the issue first arose during the hearing on the motion to withdraw the guilty plea, the government informed the district court that there was "specific evidence involving [Mrs. Hernandez], and there was a good faith basis for believing that she was chargeable and could be charged...." While the government's proffer could have been more detailed, we do not find on this record a "fundamental defect" constituting a "complete miscarriage of justice."
 
 3. Factual Basis for the Plea
 
 20
 The third argument for reversal presented by the defendant is that an inadequate factual basis exists for acceptance of a guilty plea. A trial judge may not accept a guilty plea unless there is an adequate factual basis to support a finding of guilt. McCarthy, 394 U.S. at 467. Hernandez pled guilty to one count of conspiracy to distribute five kilos of cocaine. During the hearing, the government indicated that the evidence would have shown a major cocaine distribution ring with Hernandez actively participating in buying and selling drugs. Hernandez admitted to having purchased two kilos of cocaine from an unknown person in Miami and then selling the cocaine in smaller quantities to unknown people in Maryland. He said, however, that he had "nothing to do with the lives" of the alleged co-conspirators. He also contends now that he made up his admissions regarding the cocaine dealing because his attorney told him he must admit to some involvement with cocaine or else the plea would be rejected by the judge and his wife would be indicted.
 
 
 21
 We find the argument unpersuasive. First, after the government gave a detailed statement of evidence, Hernandez stated on the record that he agreed with it. Moreover, "to establish a factual basis the trial court does not have to make a direct inquiry of the defendant. [Rather,] the court may find the factual basis in anything that appears on the record." United States v. Fountain, 777 F.2d 351, 356 (7th Cir.1985). Here, the government indicated that the testimony of numerous witnesses would link Hernandez to the conspiracy. To the extent that Hernandez admitted only to selling a smaller quantity than five kilos, the government points out that he is responsible for the actions of others in the conspiracy.
 
 
 22
 The cases relied upon by Hernandez in support of his argument that a lack of factual basis exists are distinguishable. In Montgomery v. United States, 853 F.2d 83 (2d Cir.1988), the court found no adequate factual basis for a guilty plea to a conspiracy charge where the defendant admitted only to conspiring with a named DEA agent and a confidential informant. The government points out that the defense counsel in Montgomery stated that the individual could conspire with government agents, a clear misstatement of the law. Moreover, the government did not offer its own proof of conspiracy with the co-conspirator named in the indictment. By contrast, in this case, there was no egregious mistake of law by defense counsel, the defendant admitted that he personally bought and sold cocaine, the government indicated that it had proof for the charge independent of any admissions by the defendant, and the defendant agreed with the government's statement of the evidence indicating his involvement in a large scale conspiracy.
 
 
 23
 In United States v. Van Buren, 804 F.2d 888 (6th Cir.1986), the defendant had pled guilty to using a communications facility to conspire to distribute cocaine. During the Rule 11 proceeding, the defendant only acknowledged calling to ask to buy a small quantity of cocaine consistent with personal use. Moreover, no explanation of the relatively complex charge was given to the defendant. The court held that the admissions of the defendant did not establish a factual basis to show use of the phone to further a conspiracy to distribute cocaine. The government argues that this case differs because the charge is easily understood. See Van Buren, 804 F.2d at 892 (suggesting that a reading of the indictment may be enough to satisfy Rule 11 for easily understood charges). In addition, Hernandez admitted to buying and selling cocaine (i.e., distributing cocaine), not just personal use.
 
 
 24
 Finally, in United States v. Fountain, 777 F.2d 351 (7th Cir.1985), the government failed to implicate the defendant as an accessory in the alleged crime. The defendant did not admit to any involvement, so nothing in the record linked the defendant to the crime. As a result, the court allowed the defendant to replead. In this case, the government offered abundant evidence linking Hernandez to the conspiracy, and Hernandez himself admitted to buying and selling significant quantities of cocaine.
 
 
 25
 Based on the record in this case, we find an adequate factual basis to support acceptance of the guilty plea.
 
 4. Ineffective Assistance of Counsel
 
 26
 Hernandez alleges that he received ineffective assistance from his trial counsel. In reviewing such a claim, this court needs to determine only that " 'counsel's advice was within the range of competence demanded of attorneys in criminal cases.' " Marzullo v. State of Maryland, 561 F.2d 540, 543 (4th Cir.1977) (citing McMann v. Richardson, 397 U.S. 759, 770-71 (1970)). Hernandez claims that his lawyer's advice was defective because the lawyer (1) indicated to the court that he did not know how to defend Hernandez's interests, (2) did not prepare adequately for trial, and (3) did not know the precise sentence that would apply to the plea agreement. We find, however, that Hernandez cannot sustain an ineffective assistance of counsel claim on any of these three grounds.
 
 
 27
 The defense attorney's statement to the effect that he did not know how to defend Hernandez stemmed not from any incompetence, but from the inability or unwillingness of Hernandez to help prepare a defense. Hernandez claimed he was innocent and denied knowing or having any connection with virtually all of the government witnesses. The lawyer had to get virtually all relevant information from the prosecutor. The defense attorney was expressing frustration over having little information with which to work in defending Hernandez. In this context, the lawyer's performance did not fall below the minimal level of competence required.
 
 
 28
 Hernandez claims next that the attorney did not adequately prepare for trial because he failed to interview witnesses or investigate the basis for the government's threat to indict his wife. While the defense attorney did not interview witnesses, it appears that the witnesses named by Hernandez would not have offered anything of probative value to his defense. He did not interview government witnesses because he had alternative sources of information about their testimony (such as grand jury transcripts and statements to detectives).
 
 
 29
 Hernandez complains further that his defense attorney did not investigate the grounds for the government threat to indict Hernandez's wife. As discussed above, nothing in the record suggests that the government was acting with anything other than good faith. Without some indication that the government did not have a reasonable basis to proceed against Mrs. Hernandez, any omission on the attorney's part would constitute at most harmless error.
 
 
 30
 Finally, the defense counsel did not know precisely the applicable sentence at the time of the plea agreement. However, the attorney knew that the statutory maximum was life imprisonment, the government would recommend a sentence of up to 20 years, and the government had a very strong case that would almost certainly lead to a conviction. This information provided a sufficient basis for him to advise Hernandez to accept the plea.
 
 5. Rule 11 Proceedings and Taped Records
 
 31
 Proceedings under Rule 11 of the Federal Rules of Criminal Procedure are intended to (1) ensure that every defendant is afforded appropriate procedural safeguards, and (2) provide a complete record at the time the plea is entered to facilitate review. Specifically, the Rule provides that a "verbatim record of the proceedings at which the defendant enters a plea shall be made." Rule 11(g), Fed.R.Crim.P. Because Hernandez does not speak or understand English, an interpreter translated statements between Spanish and English. The stenographic record contains all statements made in English, but not statements made in Spanish, only their English translation. Hernandez argues that the court should have recorded the hearing on tape to ensure a verbatim record of everything said, not just the English translations.
 
 
 32
 Hernandez does not raise any specific attacks on the accuracy of the record. Rather, he levies a general attack on the record and asserts that there is no way to monitor the accuracy of the interpreter's translations. In essence, he argues that a per se violation of Rule 11 sufficient to allow withdrawal of a guilty plea exists whenever the court fails to tape record all proceedings under Rule 11 involving a translator. We cannot agree. The translator was fully qualified and later testified that he translated everything completely and accurately. Nothing in the record, other than a general allegation by the defendant, suggests that the translations were not accurate. Moreover, the defendant has pointed to no authority, and we have found none, requiring a tape recording of Rule 11 proceedings, as opposed to a stenographic record. If the defendant had made specific allegations of statements incorrectly translated and demonstrated how he was prejudiced, we might view the matter differently. In this case, however, we see no manifest injustice requiring the withdrawal of the guilty plea.
 
 
 33
 For the reasons stated, we find that the district court did not err in denying the defendant's motion to withdraw a guilty plea filed after sentencing.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 It is not immediately obvious that the decision in Hill, which concerned a request for habeas relief under 28 U.S.C. Sec. 2255, applies to this direct appeal by Hernandez from the denial of his motion to withdraw a guilty plea. However, under the 1983 Amendments to Rule 32(d), Fed.R.Crim.P., a defendant who fails to move to withdraw a guilty plea until after sentencing must proceed either by "direct appeal or by motion under 28 U.S.C. Sec. 2255." The Commentary to the amendments explains that "a defendant who proceeds too late to come under the more generous 'fair and just' standard must seek relief under Sec. 2255, meaning the applicable standard is that stated in Hill v. United States...." The "fair and just" standard applies only to motions to withdraw a plea made before sentencing, so Hernandez, who did not seek to withdraw his plea until after sentencing, proceeded "too late" to fall under the more lenient standard
 
 
 [2]
 Section 846 is a conspiracy provision. The conspirators were alleged to have conspired to violate Sec. 841(a)(1) (i.e., distribution of cocaine)
 
 
 [3]
 Congress amended the statute in 1988 to strike the language used by the Supreme Court in Bifulco to limit the penalties for convictions under Sec. 846. See Anti-Drug Abuse Act of 1988, Title I, Sec. 6470(a), 44 Cr.L.Rpt. 3014. The statute now reads that a violation of Sec. 846 carries "the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. Sec. 846. Thus, it appears that persons convicted of conspiracy to distribute cocaine after 1988 are, among other things, not eligible for parole
 
 
 [4]
 In situations where the family member receiving lenient treatment has not already been indicted, the court should take particular care to ensure that the government acts in good faith and with probable cause to indict the third party. Martin v. Kemp, 760 F.2d 1244, 1247-48 (11th Cir.1985). "Indeed, absent probable cause to believe that the third person has committed a crime, offering 'concessions' as to him or her constitutes a species of fraud." Nuckols, 606 F.2d at 569. In Nuckols, the court, unable to determine on the record whether probable cause existed, reversed and remanded for "a hearing on whether the alleged threats to prosecute [the defendant's] wife were founded in good faith upon probable cause." 606 F.2d at 570
 While we do not find it necessary to remand this case, the government could make more of an affirmative effort to place enough evidence in the record to support its threat to proceed against an unindicted third party.