# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v SAMUELS

Docket No. 164050. Argued on application for leave to appeal March 14, 2024. Decided July 12, 2024.

Dwight T. Samuels was charged in the Wayne Circuit Court as a fourth-offense habitual offender, MCL 769.12, with seven felony counts: one count of assault with intent to commit murder, MCL 750.83; one count of assault with intent to commit great bodily harm less than murder, MCL 750.84; one count of being a felon in possession of a firearm, MCL 750.224f; one count of carrying a concealed weapon, MCL 750.227; and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant's identical twin brother, Duane, was similarly charged; the charges resulted from a fight defendant and his twin brother were involved in at a restaurant. The prosecution offered the brothers a package-deal plea offer, under which each of them would plead guilty to assault with intent to murder and to one count of felony-firearm, in exchange for the remaining charges being dismissed. However, the offer was contingent on both brothers accepting the plea offer. At the plea hearing, defendant initially objected to the package-deal plea offer, stating that it was "not right," and when the trial court asked how defendant wanted to proceed, defendant stated that he wanted to go to trial. However, after his twin brother's trial counsel indicated that his brother wished to plead guilty, defendant changed his plea and informed the trial court that he also wished to plead guilty. Defendant and his twin brother both pleaded in accordance with the package-deal plea offer, and the trial court accepted the pleas. Neither brother raised the issue of voluntariness during the plea colloquy. At sentencing, both defendant and his twin brother moved to withdraw their pleas, arguing that they were involuntary because the conditional format of the package-deal plea offer was coercive and had left them with no choice but to plead guilty. Without first holding an evidentiary hearing, the court, Qiana D. Lillard, J., denied the motions, reasoning that the pleas had been entered into freely, knowingly, and voluntarily; the trial court then sentenced defendant in accordance with the plea offer. Defendant sought leave to appeal in the Court of Appeals, and the Court of Appeals, MURRAY, P.J., and KELLY and LETICA, JJ., denied the application in an unpublished order entered July 9, 2020 (Docket No. 353302). Defendant sought leave to appeal in the Supreme Court, and the Supreme Court, in lieu of granting the application, remanded the case to the Court of Appeals for consideration of the following issues as on leave granted: (1) whether a trial court is required to hold an evidentiary hearing on the voluntariness of a guilty plea that is induced, in part, by an offer of leniency to a relative and, if so, (2) how a trial court is to determine whether an offer of leniency to a relative rendered the defendant's plea involuntary in

fact. 507 Mich 928 (2021). On remand, the Court of Appeals, SAWYER, P.J., and RIORDAN and REDFORD, JJ., affirmed the trial court's denial of defendant's motion to withdraw his plea without an evidentiary hearing. 339 Mich App 664 (2021). In reaching that conclusion, the Court of Appeals held that "a trial court determines the voluntariness of a guilty plea induced by a promise of leniency to a relative, or any other third party, by assessing whether the prosecution had probable cause to prosecute the third party at the time the defendant pleaded guilty." Defendant sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant defendant's application or take other action. 509 Mich 985 (2022).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CLEMENT and Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

In a package-deal plea offer, a prosecutor requires that multiple defendants all agree to the plea offer for any single defendant to receive the benefit of the plea. When a defendant seeks to withdraw his plea on the basis that it was involuntary and the record raises a question of fact about the voluntariness of the plea that was made in accordance with a package-deal plea offer to multiple defendants, a trial court must hold an evidentiary hearing to determine whether the defendant's plea was involuntary, taking into consideration the totality of the circumstances. This analysis requires courts to consider the non-exhaustive factors set forth in *In re Ibarra*, 34 Cal 3d 277 (1983). Application of the *Ibarra* factors is not limited to familial relationships, so the nature of the relationship between codefendants is also a relevant factor to be considered at the evidentiary hearing. A defendant's plea is involuntary if, under the totality of the circumstances, their will was overborne such that the decision to plead guilty was not the product of free will. The record in this case raised a question of fact regarding whether defendant's plea was involuntary, and his plea-hearing testimony did not directly contradict that claim. In light of those conclusions, defendant was entitled to an evidentiary hearing on whether he should be allowed to withdraw his plea as being involuntary. The Court of Appeals judgment was reversed, and the case was remanded to the trial court to conduct such an evidentiary hearing.

1. The Due Process Clause of the United States Constitution requires that a defendant's guilty or no-contest plea be voluntary and knowing because such a plea constitutes a waiver of several constitutional rights. This requirement mandates not only that a defendant enter into a plea bargain of their own free will but that the defendant's decision is a knowing, intelligent act that is done with sufficient awareness of the relevant circumstances and likely consequences. MCR 6.302 integrates this constitutional requirement into the Michigan Court Rules. MCR 6.302(A) provides that a "court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out" the requirements in MCR 6.302(B) through MCR 6.302(E). In turn, MCR 6.302(C) requires a trial court to conduct certain inquiries before accepting a plea to ensure the plea is voluntary. In particular, MCR 6.302(C)(4) requires the trial court to question the defendant whether anything has been promised to him beyond what is reflected in the plea agreement, whether anyone has threatened the defendant, and whether it is the defendant's own choice to plead guilty. However, while the specific requirements of MCR 6.302(C) are directed at ensuring the voluntariness of a defendant's plea, these requirements alone might not form a sufficient inquiry into voluntariness.

2. In a package-deal plea offer, a prosecutor requires that multiple defendants all agree to the plea offer for any single defendant to receive the benefit of the plea. Package-deal plea offers might pose a greater danger of inducing false pleas than individual plea offers because of the presence of extraneous factors. However, there is nothing in the Michigan Court Rules or Michigan caselaw that suggests package-deal plea offers are so unique and so coercive that they must always be singled out for special inquiry *before* a plea can be taken. Instead, when the record contains some substantiated allegation that raises a question of fact as to the defendant's claim that their guilty plea was involuntary because it was entered on the basis of a promise of leniency to a third party, and when the defendant's testimony at the plea hearing does not directly contradict that allegation, the trial court must hold an evidentiary hearing to determine whether the plea was involuntary. This does not mean that a trial court should not consider the special nature of a package-deal plea offer at the plea colloquy, just that the trial court is not required to sua sponte engage in a special inquiry during the plea hearing whether the mere existence of a package-deal plea offer renders the plea involuntary.

3. To determine at a plea-withdrawal hearing whether a package-deal plea offer rendered a plea involuntary, courts must apply a totality-of-the-circumstances analysis, taking into consideration the non-exhaustive factors set forth in *Ibarra* that have been adopted by other state courts. Specifically, courts must (1) determine whether the inducement for the plea was proper, making sure that the prosecution did not misrepresent facts to the defendant and that the prosecutor had a reasonable and good-faith case against the third parties to whom leniency was promised, (2) ensure that the factual basis of the guilty plea was supported by the facts, (3) examine carefully the nature and degree of coerciveness, taking into consideration whether promises of leniency to a close friend or family member pressured the defendant to enter the plea, making the plea involuntary, (4) determine whether the promise of leniency to a third party was an insignificant consideration in entering the plea, making it unlikely that the defendant was forced into pleading guilty, and (5) consider any other factors that might be relevant to the inquiry, including the age of the defendant, whether the defendant or the prosecutor initiated the plea negotiations, and whether charges have already been pressed against a third party. Application of the *Ibarra* factors is not limited to familial relationships, so the nature of the relationship between codefendants is also a relevant factor to be considered at the evidentiary hearing. This test is preferable to the single-factor inquiry adopted by the Court of Appeals. While it is relevant whether the prosecution had probable cause to prosecute third parties in a package-deal plea offer, the totality-of-the-circumstances inquiry is more consistent with how voluntariness is traditionally assessed in the criminal-law context. Accordingly, guided by the *Ibarra* factors, a court should determine whether a defendant's plea was voluntary by considering the totality of the circumstances. Stated differently, when a defendant seeks to withdraw his plea on the basis that it was involuntary, a court should apply those factors to determine whether the plea was the product of an essentially free and unconstrained choice by its maker, or whether the defendant's will has been overborne and their capacity for self-determination critically impaired.

4. In this case, the record raised a question of fact as to whether defendant voluntarily waived his due-process rights when he entered his plea. At the plea colloquy, defendant indicated a desire to go to trial, and that desire only changed after his twin brother stated that he wanted to take the plea offer. Defendant also moved to withdraw his plea before sentencing and agreed with the trial court that the package-deal plea offer was coercive. Contrary to the test applied by the

Court of Appeals, the inquiry did not end just because the prosecution had probable cause to charge his twin brother. And notably, defendant's plea-hearing testimony did not directly contradict his claim that his plea was involuntary. For these reasons, defendant was entitled to an evidentiary hearing on whether his plea was involuntarily made.

Court of Appeals judgment reversed; case remanded to the trial court for further proceedings.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, disagreed with the majority's holding that any defendant who pleads guilty as part of a joint plea offer may seek to withdraw the guilty plea by alleging that they were coerced by a promise of leniency to a third-party codefendant. The majority failed to explain why it expanded its holding to offers of leniency to *any* third party involved in a joint plea offer, rather than limiting it to plea deals involving offers of leniency to *relatives* as ordered by this Court. The facts in *Ibarra* are procedurally distinct from this case because it developed those factors in the context of the plea-taking process, not in the context of a plea-withdrawal hearing where it is alleged that the plea-taking process was deficient. Therefore, that case is inapposite. Moreover, the state court decisions cited by the majority as having adopted the *Ibarra* factors were also in the context of a plea-taking hearing, not a plea-withdrawal hearing. By adopting the *Ibarra* factors that are used by California courts during the plea-taking process, the majority ignores the combined wisdom of every federal court that has recognized that the existing plea-taking framework is sufficient. In fact, this decision results in Michigan being the first jurisdiction in the nation to require trial courts to conduct a second plea colloquy whenever a defendant who pleaded guilty in a joint plea alleges that his plea was involuntary simply because it was part of a joint plea deal. Further, by ensuring that the defendant's plea is understanding, voluntary, and accurate and that it is grounded in fact, MCR 6.302 already provides an elaborate process to guard the constitutional rights of defendants who choose to plead guilty. By allowing defendants who enter a package-deal plea offer that is contingent on other charged defendants also pleading guilty a period to revoke the plea by claiming involuntariness, the majority's opinion expands the requirements of MCR 6.302 in ways not plainly expressed in the rule. This new requirement will increase the trial court's workload by requiring it to make the same analysis twice—first at the plea-colloquy hearing and again at a plea-withdrawal hearing—before a joint plea deal to multiple defendants is final. This requirement will also result in prosecutors offering fewer plea bargains in cases involving multiple defendants, unduly delaying already congested trial court dockets, which will be bad for all involved in the criminal justice system, including defendants. Justice ZAHRA would not have adopted and expanded the *Ibarra* test to motions to withdraw pleas and would have affirmed the judgment of the Court of Appeals.

**Michigan Supreme Court**
**Lansing, Michigan**

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

# OPINION

FILED July 12, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                  No. 164050

DWIGHT T. SAMUELS,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case concerns the voluntariness of a defendant's plea; specifically, we consider how voluntariness should be addressed in the context of a package-deal plea offer where the prosecutor requires that *multiple* defendants all agree to the plea offer in order for any *single* defendant to receive the benefit of the plea. We hold that where the record raises a question of fact about the voluntariness of such a plea, a trial court must hold an evidentiary hearing to consider the totality of the circumstances in determining whether a defendant's

plea was involuntary. A defendant's plea is involuntary if, under the totality of the circumstances, their will was overborne such that the decision to plead was not the product of free will. Because we find that the record here raises a question of fact regarding whether defendant's plea was involuntary, we remand the case to the trial court to hold such an evidentiary hearing.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 19, 2019, defendant and his twin brother, Duane Samuels, were involved in a fight at a restaurant.[1] As a result, defendant was charged as a fourth-offense habitual offender, MCL 769.12, with assault with intent to commit murder, MCL 750.83; assault with intent to do great bodily harm less than murder, MCL 750.84; felon in possession of a firearm, MCL 750.224f; carrying a concealed weapon, MCL 750.227; and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.277b. Defendant's twin brother was similarly charged. The prosecutor offered a package-deal plea offer under which both defendant and his twin brother would plead guilty to assault with intent to commit murder and to one count of felony-firearm, in exchange for dismissal of the remaining charges; however, the offer was contingent upon both defendants accepting the plea offer.

At the plea hearing, defendant objected to the package-deal plea offer, stating that it was "not right." When the trial court asked how defendant wanted to proceed, defendant indicated that he wished to go to trial. It appears that defendant changed his mind once his

---

[1] It does not appear that Duane Samuels has sought leave to appeal. Accordingly, this opinion only refers to Dwight Samuels as the sole defendant.

twin brother's trial counsel indicated that his twin brother wished to plead guilty because defendant then indicated that he also wished to plead guilty. The two then pleaded in accordance with the package-deal plea offer. No issue of voluntariness was raised during the plea colloquy, and the trial court accepted the pleas.

At sentencing, defendant and his twin brother moved to withdraw their guilty pleas. Defendant argued that the pleas were involuntary. When questioned, defendant and his twin brother both agreed that the conditional format of the package-deal plea offer was coercive and had left them with no choice but to plead guilty. Without first holding an evidentiary hearing, the trial court summarily denied the motions to withdraw the pleas, finding that the pleas had been entered into freely, knowingly, and voluntarily. Defendant was thereafter sentenced in accordance with the plea offer.

The Court of Appeals initially denied defendant's application for leave to appeal for lack of merit. Defendant sought leave to appeal in this Court, and we remanded the case to the Court of Appeals for consideration as on leave granted, directing the Court of Appeals to address two issues in particular:

> (1) whether a trial court is required to hold an evidentiary hearing on the voluntariness of a guilty plea that is induced in part by an offer of leniency to a relative, see *People v James*, 393 Mich 807 (1975); and if so, (2) how a trial court is to determine whether an offer of leniency to a relative 'rendered the defendant's plea involuntary in fact.' " *Id*. [*People v Samuels*, 507 Mich 928, 928 (2021).]

On remand, the Court of Appeals affirmed the trial court's denial of defendant's motion to withdraw his plea without an evidentiary hearing. *People v Samuels*, 339 Mich App 664; 984 NW2d 854 (2021).

3

Defendant again sought leave to appeal in this Court. On May 27, 2022, we ordered oral argument on the application, directing the parties to address the same issues that we had directed the Court of Appeals to consider on remand. *People v Samuels*, 509 Mich 985 (2022).

## II. GUILTY PLEAS

"This Court reviews for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). An abuse of discretion occurs when a trial court's decision results in an outcome that falls outside the range of principled outcomes, *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016), or when a trial court makes an error of law, *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020). However, to the extent that a decision implicates constitutional issues, this presents a question of law that is reviewed de novo. *Johnson v VanderKooi*, 509 Mich 524, 534; 983 NW2d 779 (2022).

"A guilty or no-contest plea constitutes a waiver of several constitutional rights and thus triggers specific protections for the defendant." *People v Guyton*, 511 Mich 291, 298; 999 NW2d 393 (2023). "For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing." *People v Cole*, 491 Mich 325, 332-333; 817 NW2d 497 (2012). This requirement mandates not only that a defendant enter into a plea bargain of their own free will, but that their decision is a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v United States*, 397 US

4

742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970). See also *Cole*, 491 Mich at 333; *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988).

This constitutional requirement has been integrated into the Michigan Court Rules under MCR 6.302. MCR 6.302(A) states that "[t]he court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E)." MCR 6.302(C) specifically addresses whether a plea is voluntary, and it requires a trial court to conduct certain inquiries before accepting the plea. When a plea agreement exists, the trial court must ask the defendant whether anything has been promised to him beyond what is reflected in the plea agreement, "whether anyone has threatened the defendant," and "whether it is the defendant's own choice to plead guilty." MCR 6.302(C)(4).

This Court has previously rejected the notion that compliance with MCR 6.302(C) necessarily renders a plea voluntary.

> While we agree that MCR 6.302(B) through (E) constitute explicit requirements imposed on a trial court conducting a plea hearing, the broader directive of MCR 6.302(A) that the plea must be "understanding, voluntary, and accurate" might, in a given proceeding, encompass more than the explicit requirements of the remainder of the court rule. Specifically, the "understanding, voluntary, and accurate" components of subrule (A) are premised on the requirements of constitutional due process, which might not be entirely satisfied by compliance with subrules (B) through (D). [*Cole*, 491 Mich at 332.]

In other words, while the specific requirements of MCR 6.302(C) are directed at ensuring the voluntariness of a defendant's plea, these requirements alone might not form a sufficient inquiry into voluntariness. Here, we are presented with such a claim: defendant

5

argues that, despite the trial court's adherence to MCR 6.302(C), his plea was not voluntarily made because the package-deal plea offer coerced him into pleading guilty for the sake of his twin brother.

## III. PACKAGE-DEAL PLEA OFFERS

While this Court has previously held that a promise of leniency to a relative may render a guilty plea involuntary as a matter of fact, *James*, 393 Mich at 808,[2] the broader question of whether a package-deal plea offer can render a defendant's plea involuntary is a question of first impression before this Court. Relevant here, however, is *People v Lamorand*, 481 Mich 891, 891 (2008), in which this Court reversed the trial court's "order denying the defendant's motion to withdraw his plea and remand[ed] [the] case" to the trial court on the basis that "there was an insufficient factual basis to support" the plea. Justice KELLY concurred in the result reached, but she would have remanded the case to the trial court for different reasons. *Id*. at 892 (KELLY, J., concurring). In particular, Justice KELLY would have instead addressed the same issue raised in this case and adopted the test set forth by the California Supreme Court in *In re Ibarra*, 34 Cal 3d 277; 666 P2d 980 (1983). *Lamorand*, 481 Mich at 892 (KELLY, J., concurring). Both *Lamorand* and *Ibarra* concerned package-deal plea offers. In *Lamorand*, 481 Mich at 892 (KELLY, J., concurring), the defendant argued that the plea offer was coercive because rejecting it would have exposed his family members to more serious charges, whereas in *Ibarra*, 34

---

[2] *James* is not an outlier in this regard, and it is consistent with longstanding Court of Appeals precedent. See *People v Forrest*, 45 Mich App 466; 206 NW2d 745 (1973); *People v Walker*, 75 Mich App 552; 255 NW2d 658 (1977); *People v Perry*, 119 Mich App 98; 326 NW2d 437 (1982); *People v O'Neal*, 122 Mich App 370; 333 NW2d 56 (1983).

Cal 3d at 287, the defendant argued that the plea offer was coercive because he was afraid his unrelated codefendants would have harmed the defendant if he did not accept the offer.

In *Ibarra*, the California Supreme Court noted that package-deal plea offers may be unreasonable because of the extraneous factors that might bear on a defendant's decision to plead guilty, *Ibarra*, 34 Cal 3d at 287, as illustrated by the arguments of the defendants in *Lamorand* and *Ibarra*. "Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special scrutiny must be employed to ensure a voluntary plea." *Id*. The *Ibarra* court thus held that when a defendant pleads guilty pursuant to a package-deal plea offer, a trial court must conduct a totality-of-the-circumstances inquiry to determine the voluntariness of such a plea. Instead of holding, as the Court of Appeals did here, that such an inquiry may be conducted at an evidentiary hearing post-plea, *Samuels*, 339 Mich App at 671-680, the *Ibarra* Court held that such an inquiry must take place whenever a plea is taken pursuant to a package-deal plea offer, *Ibarra*, 34 Cal 3d at 286-288. In other words, the *Ibarra* court placed a duty on trial courts to determine *at the plea colloquy*, and not afterwards, whether such pleas are voluntary.

In her *Lamorand* concurrence, Justice KELLY stated that she would have addressed package-deal pleas and adopted the *Ibarra* holding despite the increased burden this would place on trial courts. *Lamorand*, 481 Mich 891 (KELLY, J., concurring). However, given that the majority instead reversed the trial court because there was an insufficient factual basis to support the defendant's guilty plea, *id*. at 891-892 (order of the Court), the full Court has not addressed this issue.

We agree with the *Ibarra* court that certain aspects of package-deal plea offers might pose a greater danger of inducing false pleas than individual plea offers because of the

7

presence of extraneous factors.  See *Ibarra*, 34 Cal 3d at 287; *Bordenkircher v Hayes*, 434

US 357, 364 n 8; 98 S Ct 663; 54 L Ed 2d 604 (1978) (recognizing that a package-deal plea

offer "might pose a greater danger of inducing a false guilty plea by skewing the assessment

of the risks a defendant must consider").  However, to the extent that the *Ibarra* court

determined it appropriate to go so far as to mandate that trial courts police the voluntariness

of plea offers at the plea colloquy, we decline to do the same.  There is nothing in the court

rules or our jurisprudence that suggests package-deal plea offers are so unique and so

coercive that they must always be singled out for special inquiry *before* a plea can be

taken.[3]  Instead, we agree with the Court of Appeals below that our traditional rules

governing evidentiary hearings apply.  See *People v Jackson*, 203 Mich App 607, 612; 513

NW2d 206 (1994) (stating that a defendant is entitled to an evidentiary hearing on the issue

of voluntariness when their challenge raises a question of fact); *People v White*, 307 Mich

App 425, 430-431; 862 NW2d 1 (2014) (holding that an evidentiary hearing is not

necessary where the defendant's assertions are inconsistent with their own testimony).

Accordingly, we affirm the Court of Appeals' holding that

> when the record contains some substantiated allegation that raises a question
> of fact as to the defendant's claim that his or her guilty plea was involuntary
> because it was entered on the basis of a promise of leniency to a relative, and
> when the defendant's testimony at the plea hearing does not directly
> contradict that allegation,[4] the trial court must hold an evidentiary hearing

---

[3] Of course, an amendment to the court rules could explicitly direct that such consideration
be given at plea colloquies going forward, much like how MCR 6.302(B)(2) was amended
following our decision in *Cole*.  MCR 6.302(B), as adopted June 20, 2012.  491 Mich
lxxxiv, lxxxiv-lxxxv (2012).

[4] While a defendant's argument that a plea was involuntary cannot be directly contradicted
by their testimony at the plea hearing, we note that a defendant's answers to questions at

8

> to determine whether the plea was involuntary. [*Samuels*, 339 Mich App at 674.]

This is not to say that a trial court need not consider the special nature of a package-deal plea offer at the plea colloquy. Due-process concerns mandate that a trial court ensure that a plea is made voluntarily, as do our court rules. See MCR 6.302(A). This may require a consideration of whether a package-deal plea offer is unduly coercive under the facts of a specific case, where, as here, a defendant indicates that such a plea offer has a bearing on the defendant's decision to plead guilty. However, we simply decline to hold that, as a matter of law, a trial court must sua sponte engage in a special inquiry during the plea hearing whether the mere existence of a package-deal plea offer renders the plea involuntary. See *James*, 393 Mich at 808 ("While a promise of leniency for a relative does not in itself amount to coercion so as to make a guilty plea involuntary as a matter of law, we recognize that it may render a plea involuntary as a matter of fact.").[5]

## IV. THE *IBARRA* FACTORS

Having determined that, absent special circumstances, a trial court need not engage in a specialized inquiry into the voluntariness of a package-deal plea offer before taking a plea, we now consider what review a trial court must engage in at a subsequent evidentiary

---

the plea colloquy do not, standing alone, justify denying an evidentiary hearing on the issue of voluntariness. See *Cole*, 491 Mich at 332 (recognizing that due process might require a court to go beyond the inquiries specifically outlined in our court rules).

[5] Although this case involves a close familial relationship between twin brothers, we note that such a relationship is not necessary for a finding that an evidentiary hearing is warranted. Instead, the nature of the relationship at issue is more properly considered under the totality-of-circumstances analysis that we adopt for assessing the voluntariness of any package-deal plea offer.

hearing. The Court of Appeals, relying on federal court caselaw, held that "a trial court determines the voluntariness of a guilty plea induced by a promise of leniency to a relative, or any other third party, by assessing whether the prosecution had probable cause to prosecute the third party at the time the defendant pleaded guilty." *Samuels*, 339 Mich App at 679.

This is in contrast with the approach articulated by the California Supreme Court in *Ibarra* and adopted by other state courts.[6] In *Ibarra*, the California Supreme Court listed several factors that must be considered in a totality-of-the-circumstances analysis when determining whether a package-deal plea offer has rendered a plea involuntary.

> First, the court must determine whether the inducement for the plea is proper. The court should be satisfied that the prosecution has not misrepresented facts to the defendant, and that the substance of the inducement is within the proper scope of the prosecutor's business. The prosecutor must also have a reasonable and good faith case against the third parties to whom leniency is promised. . . .

---

[6] See, e.g., *State v Solano*, 150 Ariz 398, 402; 724 P2d 17 (1986) (en banc) (adopting the four core *Ibarra* factors and "any other relevant factor"); *State v Tietjens*, 151 Ariz 560, 562; 729 P2d 914 (1986) (en banc) (reaffirming the *Ibarra* factors adopted by the *Solano* court); *State v Danh*, 516 NW2d 539, 542-543 (Minn, 1994) (holding that familial package-deal plea offers inherently run a high risk of coercion under notions of due process because of the likelihood that a "defendant, who would otherwise exercise [their] right to a jury trial, will plead guilty out of a sense of family loyalty"); *Butala v State*, 664 NW2d 333, 339 (Minn, 2003) (reaffirming the Minnesota Supreme Court's reasoning in *Danh*); *State v Williams*, 117 Wash App 390, 399; 71 P3d 686 (2003) (holding that the package nature of a plea deal involving a father and son must be disclosed to the court and the court must specifically inquire about whether the codefendant pressured the defendant to go along with the plea and carefully question the defendant to ensure he is acting of his own free will); *Commonwealth v DiBenedetto*, 491 Mass 390, 407; 203 NE3d 579 (2023) (holding that judges must "consider the traditional types of coercion and the unique pressure from a co-defendant or family member that might be present in a package deal") (quotation marks and citation omitted).

Second, the factual basis for the guilty plea must be considered. If the guilty plea is not supported by the evidence, it is less likely that the plea was the product of the accused's free will. The same would be true if the "bargained-for" sentence were disproportionate to the accused's culpability.

Third, the nature and degree of coerciveness should be carefully examined. Psychological pressures sufficient to indicate an involuntary plea might be present if the third party promised leniency is a close friend or family member whom the defendant feels compelled to help. . . .

Fourth, a plea is not coerced if the promise of leniency to a third party was an insignificant consideration by a defendant in his choice to plead guilty. For example, if the motivating factor to plead guilty was the realization of the likelihood of conviction at trial, the defendant cannot be said to have been "forced" into pleading guilty, unless the coercive factors present had nevertheless remained a *substantial factor* in his decision.

Our list is by no means exhaustive. Other factors which may be relevant can and should be taken into account at the inquiry. For example, the age of the defendant, whether defendant or the prosecutor had initiated the plea negotiations, and whether charges have already been pressed against a third party might be important considerations. [*Ibara*, 34 Cal 3d at 288-290 (citations omitted).]

Because we do not limit application of the *Ibarra* factors to familial relationships, the nature of the relationship between codefendants is also a relevant factor to be considered at the evidentiary hearing.

We conclude that a totality-of-the-circumstances inquiry, as outlined by the non-exhaustive *Ibarra* factors, is preferable to the single-factor inquiry that the Court of Appeals adopted. It is of course relevant whether the prosecution has probable cause to prosecute the third parties in a package-deal plea offer—both the Court of Appeals and the *Ibarra* court agree on that point. However, the *Ibarra* opinion goes further in recognizing that other factors may also be relevant to this inquiry. We believe that this broad totality-of-the-circumstances inquiry is more consistent with how voluntariness is traditionally

assessed in the criminal-law context. See *Cipriano*, 431 Mich at 333-334 (holding that the voluntariness of a confession is assessed under a totality-of-circumstances inquiry); *People v Stewart*, 512 Mich 472, 481; 999 NW2d 717 (2023). Guided by the *Ibarra* factors, a court should consider the totality of the circumstances and determine whether a defendant's plea was involuntary, i.e., whether the plea was "the product of an essentially free and unconstrained choice by its maker," or whether the defendant's "will has been overborne and his capacity for self-determination critically impaired . . . ." *Cipriano*, 431 Mich at 334 (quotation marks and citation omitted); see also *Stewart*, 512 Mich at 481.

We recognize, as Justice KELLY did in *Lamorand*, that consideration of the *Ibarra* factors at an evidentiary hearing may increase the burden on trial courts but that doing so is appropriate: "By considering the *Ibarra* factors, courts can find a middle ground. Prosecutors can continue to use the valuable tool of package-deal plea agreements, and those accused can be protected in accordance with their constitutional rights from unlawful coercion to plead guilty." *Lamorand*, 481 Mich at 895 (KELLY, J., concurring).[7]

## V. APPLICATION

We now consider whether defendant is entitled to an evidentiary hearing regarding the voluntariness of his plea. Because we believe that defendant sufficiently fulfilled the

---

[7] The dissent contends that adopting the *Ibarra* factors will make plea deals "difficult or unworkable" for prosecutors and will double the work for trial courts. We disagree. Our opinion does not require an evidentiary hearing every time there is a package-deal plea offer, nor are we changing the burden for what defendants must prove in order to establish entitlement to an evidentiary hearing. Instead, our trial courts will continue to assess pleas under MCR 6.302, and the *Ibarra* factors only apply to guide the lower courts in assessing voluntariness in the context of package-deal plea offers.

necessary conditions, we reverse the Court of Appeals' holding that that defendant is not entitled to an evidentiary hearing concerning the voluntariness of his plea. The record raises a question of fact as to whether defendant voluntarily waived his due-process rights. The plea colloquy transcript reveals that defendant indicated a desire to go to trial that only changed after his twin brother stated that he wished to take the plea offer. Moreover, defendant sought to withdraw his plea before sentencing and agreed with the trial court that the package-deal plea offer was coercive. Although the record suggests that the prosecution had probable cause to charge defendant's twin brother, that does not end the inquiry under a totality-of-the-circumstances analysis. Further, defendant's plea-hearing testimony does not directly contradict his claim that his plea was involuntarily made. Accordingly, we hold that defendant is entitled to an evidentiary hearing on the question of voluntariness. At the evidentiary hearing, the trial court will apply the non-exhaustive *Ibarra* factors in conducting a totality-of-the-circumstances analysis to determine whether defendant voluntarily entered a guilty plea.

## VI. CONCLUSION

We hold that a defendant may be entitled to an evidentiary hearing on the question of voluntariness where the record raises a question of fact as to whether the defendant's plea was induced by a promise of leniency to a third party. At such an evidentiary hearing, the trial court must conduct a totality-of-the-circumstances inquiry, applying the non-exhaustive *Ibarra* factors where relevant. Because defendant successfully raised a question of fact and because his plea-hearing testimony does not directly contradict that claim, we

13

reverse the judgment of the Court of Appeals and remand this case to the trial court for the

trial court to conduct such an evidentiary hearing.  We do not retain jurisdiction.

Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                         No. 164050

DWIGHT T. SAMUELS,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

This case concerns a criminal defendant who, with the help of his twin brother, beat and shot a man in a Detroit coney island restaurant. Defendant, Dwight T. Samuels, and his twin brother were indicted for assault with intent to commit murder, MCL 750.83; assault with intent to do great bodily harm less than murder, MCL 750.84; felon in possession of a firearm, MCL 750.224f; carrying a concealed weapon, MCL 750.227; and three counts of possession of a firearm during the commission of a felony, MCL 750.277b. Defendant was also charged as a fourth-offense habitual offender under MCL 769.12. The Wayne County Prosecutor's Office offered the brothers a joint plea deal, meaning that the deal's validity was conditional on both brothers accepting it. The prosecution explained that individual plea deals were not offered to the brothers because it would be difficult to explain to the jury why only one brother was on trial and which brother it was who used the gun. The twins accepted the plea offer, and the trial court conducted a full plea colloquy as required by applicable law and court rule. Defendant then moved to withdraw his guilty plea, arguing that it was involuntary because his plea was made pursuant to a joint plea

deal offered to a codefendant relative. The trial court denied his motion to withdraw, and the Court of Appeals denied defendant's delayed application for leave to appeal.[1] Defendant applied for leave to appeal in this Court, and we remanded as on leave granted, directing the Court of Appeals to consider:

> (1) whether a trial court is required to hold an evidentiary hearing on the voluntariness of a guilty plea that is induced in part by an offer of leniency *to a relative*, see *People v James*, 393 Mich 807 (1975); and if so, (2) how a trial court is to determine whether an offer of leniency *to a relative* "rendered the defendant's plea involuntary in fact. *Id*."[2]

On remand, the Court of Appeals again denied relief to defendant.[3] Defendant again sought leave to appeal in this Court, and we directed the parties to brief the same two questions considered by the Court of Appeals on remand, i.e., "whether a trial court is required to hold an evidentiary hearing on the voluntariness of a guilty plea that is induced in part by an offer of leniency *to a relative*" and "how a trial court is to determine whether an offer of leniency *to a relative* 'rendered the defendant's plea involuntary in fact.' "[4]

Presumably, then, we would now decide the procedure a trial court must apply when resolving a motion to withdraw a plea that is allegedly involuntary solely because it was part of a joint plea deal offered *to a relative*. But the majority opinion improvidently and without explanation ignores the scope of this appeal, the parties' arguments, and the content

---

[1] *People v Samuels*, unpublished order of the Court of Appeals, entered July 9, 2020 (Docket No. 353302).

[2] *People v Samuels*, 507 Mich 928, 928 (2021) (emphasis added).

[3] *People v Samuels*, 339 Mich App 664; 984 NW2d 854 (2021).

[4] *People v Samuels*, 509 Mich 985, 985 (2022) (emphasis added).

of this Court's prior orders to hold that *any* defendant who pleads guilty as part of a joint plea offer may seek to withdraw the guilty plea based merely on the allegation that he or she was coerced by a promise of leniency to a third party. To be clear, no party briefed whether *all* joint pleas are de jure suspect because one of the defendants might have been coerced by an offer of leniency to a third party. The majority opinion does not explain why it has fashioned its ruling wider than the scope of defendant's appeal and briefing.

Specifically, the majority opinion directs lower courts to apply a test created in *In re Ibarra*[5] whenever a defendant who pleaded guilty subject to a joint plea deal alleges that he or she was coerced by an offer of leniency to a codefendant. The majority opinion claims that *Ibarra*'s application has been "adopted by other state courts," and in support of this claim, the majority opinion cites opinions from four different state courts. But *Ibarra* is procedurally distinct from this case; therefore, it is inapposite. Likewise, none of the other state court opinions cited by the majority applied *Ibarra*'s test to motions to withdraw a guilty plea. This Court may be the first in the nation to apply *Ibarra* to a motion to withdraw a guilty plea.

This is a significant distinction. *Ibarra* dealt only with the plea-taking process, not post-plea claims that the plea-taking process was deficient. Michigan applies MCR 6.302, which provides an elaborate process to guard the rights of an accused who elects to offer a plea of guilty. MCR 6.302(A) provides that a trial court "may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." Other MCR 6.302 subrules require a trial court to engage in a plea colloquy to

_____

[5] *In re Ibarra*, 34 Cal 3d 277; 666 P2d 980 (1983).

3

ensure the defendant's plea is understanding, voluntary, and accurate and that it is grounded in fact.[6] In this case, the majority opinion provides defendants who enter a package plea deal contingent on other charged defendants also pleading guilty a period to revoke the plea by claiming involuntariness. This newly imposed requirement doubles the trial courts' work, holding that in addition to MCR 6.302's requirements at the plea-taking stage a trial court must also "apply the non-exhaustive *Ibarra* factors in conducting a totality-of-the-circumstances analysis to determine whether defendant voluntarily entered a guilty plea." Accordingly, a trial court may now have to conduct the same analysis twice before a joint plea made to multiple defendants is final.[7]

The majority opinion presumes without explanation that this double analysis will better protect defendants' rights. Further, the majority opinion summarily dismisses weighty concerns about the efficiency of trial courts' dockets and risks that a defendant may give different answers between the plea colloquy and the hearing on the motion to withdraw a plea, forcing the trial court to make difficult factual and legal findings. Further, the majority opinion fails to grasp the likelihood that prosecutors will offer substantially

---

[6] See MCR 6.302(B), (C), and (D).

[7] The majority opinion notes that defendant's claim of involuntariness is tied to concerns over his twin brother going to trial. And as I have noted, this appeal, all the briefing before this Court and the Court of Appeals, this Court's order remanding the case to the Court of Appeals, and this Court's order directing oral argument on the application focused on the standard applicable to a plea contingent on leniency *to a relative*. Now, at the eleventh hour, the majority does an about-face, holding that "we do not limit application of the *Ibarra* factors to familial relationships[.]" The majority does not deign to explain the significant expansion of its holding or offer any reasoning whatsoever to support its change of mind; nor does the majority even try to cite a single jurisdiction anywhere in the country that offers *unrelated* codefendants who enter joint plea deals anything like the expansive protection offered by the majority opinion.

fewer plea bargains in cases involving multiple defendants, particularly those with familial ties between defendants, because it will take twice as long and twice as much work to confirm the plea's validity if the defendant challenges it. Such pleas are often not entered until the proceedings are at or near the scheduled trial date, when the prosecution has witnesses subpoenaed and prepared for trial. Prosecutors may well decide to offer no pleas because it will be difficult or unworkable to assemble the witnesses for a trial date well in the future, after a defendant's buyer's remorse results in a claim of involuntariness resulting in another trial date. All told, the majority opinion expands the requirements of MCR 6.302 in ways not plainly expressed in the rule, will unduly delay our already congested trial court dockets, will result in fewer plea offers for many defendants, and will impose greater burdens on many already overworked prosecutors. Most importantly, however, is that the majority opinion is bad for the people of Michigan who expect our courts to run efficiently and equitably for all involved in our criminal justice system: defendants, victims, jurors, law enforcement, and witnesses. Accordingly, I dissent.

## I. ANALYSIS

I agree with the majority opinion's description of the facts of this case. The majority opinion glosses over, however, the full extent of the protections afforded defendants by MCR 6.302, which governs the taking of a plea. In full, MCR 6.302 provides:

> (A) Plea Requirements. The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

5

(B) An Understanding Plea.  Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

(1) the name of the offense to which the defendant is pleading . . . . ;

(2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c;

(3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:

(a) to be tried by a jury;

(b) to be presumed innocent until proved guilty;

(c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty;

(d) to have the witnesses against the defendant appear at the trial;

(e) to question the witnesses against the defendant;

(f) to have the court order any witnesses the defendant has for the defense to appear at the trial;

(g) to remain silent during the trial;

(h) to not have that silence used against the defendant; and

(i) to testify at the trial if the defendant wants to testify.

(4) if the plea is accepted, the defendant will be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not the defendant's own choice to enter the plea;

(5) if the plea is accepted, the defendant may be giving up the right to appeal issues that would otherwise be appealable if she or he were convicted at trial.  Further, any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right;

The requirements of subrules (B)(3) and (B)(5) may be satisfied by a writing on a form approved by the State Court Administrative Office.  If a

6

court uses a writing, the court shall address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights. The waiver may be obtained without repeating the individual rights.

(C) A Voluntary Plea.

(1) The court must ask the prosecutor and the defendant's lawyer whether they have made a plea agreement. If they have made a plea agreement, which may include an agreement to a sentence to a specific term or within a specific range, the agreement must be stated on the record or reduced to writing and signed by the parties. The parties may memorialize their agreement on a form substantially approved by the SCAO. The written agreement shall be made part of the case file.

(2) If there is a plea agreement, the court must ask the prosecutor or the defendant's lawyer what the terms of the agreement are and confirm the terms of the agreement with the other lawyer and the defendant.

(3) If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a sentence to a specified term or within a specified range or a prosecutorial sentence recommendation, the court may

(a) reject the agreement; or

(b) accept the agreement after having considered the presentence report, in which event it must sentence the defendant to a specified term or within a specified range as agreed to; or

(c) accept the agreement without having considered the presentence report; or

(d) take the plea agreement under advisement.

If the court accepts the agreement without having considered the presentence report or takes the plea agreement under advisement, it must explain to the defendant that the court is not bound to follow an agreement to a sentence for a specified term or within a specified range or a recommendation agreed to by the prosecutor, and that if the court chooses not to follow an agreement to a sentence for a specified term or within a specified range, the defendant will be allowed to withdraw from the plea agreement. A judge's decision not to follow the sentence recommendation does not entitle the defendant to withdraw the defendant's plea.

7

(4) The court must ask the defendant:

(a) (if there is no plea agreement) whether anyone has promised the defendant anything, or (if there is a plea agreement) whether anyone has promised anything beyond what is in the plea agreement;

(b) whether anyone has threatened the defendant; and

(c) whether it is the defendant's own choice to plead guilty.

(D) An Accurate Plea.

(1) If the defendant pleads guilty, the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading.

(2) If the defendant pleads nolo contendere, the court may not question the defendant about participation in the crime. The court must:

(a) state why a plea of nolo contendere is appropriate; and

(b) hold a hearing, unless there has been one, that establishes support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading.

(E) Additional Inquiries. On completing the colloquy with the defendant, the court must ask the prosecutor and the defendant's lawyer whether either is aware of any promises, threats, or inducements other than those already disclosed on the record, and whether the court has complied with subrules (B)-(D). If it appears to the court that it has failed to comply with subrules (B)-(D), the court may not accept the defendant's plea until the deficiency is corrected.

(F) Plea Under Advisement; Plea Record. The court may take the plea under advisement. A verbatim record must be made of the plea proceeding.

In sum, MCR 6.302 ensures that no trial judge may accept a guilty plea without confirming—based on all the evidence before the court—that the defendant's plea is understanding, voluntary, and accurate.

Strangely, the majority opinion does not discuss the details of MCR 6.302 or MCR 6.310 before adopting *Ibarra*'s totality-of-the-circumstances test. This is strange because

MCR 6.302 governs the taking of a guilty plea, and MCR 6.310 governs when a defendant may withdraw his or her guilty plea after a trial court has accepted it. Relevant here, MCR 6.310(B) and (C) provide that

> a plea may be withdrawn on the defendant's motion or with the defendant's consent, only in the interest of justice . . . . If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if . . . the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside[.][8]

Thus, under MCR 6.310, a plea may only be withdrawn—absent circumstances indisputably not present in this case—if the trial court determines there was an error in the original plea-taking process, which, again, is governed by MCR 6.302. The majority opinion either ignores or misunderstands the procedural posture of this case, treating the case as if it is about a defect in the plea-taking process and not about a motion to withdraw a plea, *simply because it is a joint plea deal offered to a relative*. Alternatively, the majority opinion appears to create an exception to MCR 6.310, holding that a defendant who does not allege an error in the plea-taking process but solely alleges that his plea was involuntary because it was a part of a joint plea offered *to any codefendant* may withdraw his plea if the totality-of-the-circumstances analysis favors him. Regardless of whether the former or the latter is the majority's intention, the *Ibarra* totality-of-the-circumstances test that the

---

[8] MCR 6.310 also allows a defendant to withdraw a plea without alleging an error in the plea-taking process if the plea was conditioned on a sentence within a certain range "and the court states that it is unable to follow the agreement," MCR 6.310(B)(2)(a), or if other factual and legal findings are made by the court, MCR 6.310(B)(2)(b) and (c). Because defendant does not allege that the prosecution promised him a certain sentence length or certain favorable factual and legal findings, only the portion of MCR 6.310 providing for withdrawal of a plea because of an error in the plea-taking process is relevant.

9

majority opinion requires trial courts to use when a defendant alleges his plea was involuntary solely because it was part of a joint plea is substantially the same test as is already used in MCR 6.302. Thus, the majority opinion—whether read as a special category of error or an exception to a defendant's general duty to show an error in the plea-taking process—effectively requires a trial court to repeat its analysis whenever a defendant moves to withdraw a joint plea.

Besides not addressing the requirements of MCR 6.310, the majority opinion also adopts a test used by the California Supreme Court in a completely different procedural situation. In *Ibarra*, the defendant alleged that "his plea bargain was per se invalid because a 'package-deal' arrangement is inherently coercive."[9] The California Supreme Court held that "when a defendant pleads guilty pursuant to a 'package-deal' arrangement, the trial court has a duty to conduct further inquiry into the voluntariness of the plea: although such a bargain is not per se coercive, it may be so under a totality of the circumstances."[10] The California Supreme Court stated that "[v]arious factors must be considered at the inquiry," including:

> First, the court must determine whether the inducement for the plea is proper. The court should be satisfied that the prosecution has not misrepresented facts to the defendant, and that the substance of the inducement is within the proper scope of the prosecutor's business. The prosecutor must also have a reasonable and good faith case against the third parties to whom leniency is promised. . . .
>
> Second, the factual basis for the guilty plea must be considered. If the guilty plea is not supported by the evidence, it is less likely that the plea was

---

[9] *In re Ibarra*, 34 Cal 3d at 281.

[10] *Id*. at 281-282.

the product of the accused's free will.  The same would be true if the "bargained-for" sentence were disproportionate to the accused's culpability.

Third, the nature and degree of coerciveness should be carefully examined.  Psychological pressures sufficient to indicate an involuntary plea might be present if the third party promised leniency is a close friend or family member whom the defendant feels compelled to help. . . .

Fourth, a plea is not coerced if the promise of leniency to a third party was an insignificant consideration by a defendant in his choice to plead guilty.  For example, if the motivating factor to plead guilty was the realization of the likelihood of conviction at trial, the defendant cannot be said to have been "forced" into pleading guilty, unless the coercive factors present had nevertheless remained a *substantial factor* in his decision.

Our list is by no means exhaustive.  Other factors which may be relevant can and should be taken into account at the inquiry.  For example, the age of the defendant, whether defendant or the prosecutor had initiated the plea negotiations, and whether charges have already been pressed against a third party might be important considerations.[11]

*Ibarra* establishes that California trial courts must consider the above-listed factors *before* accepting a joint plea made by codefendants.  *Ibarra* says nothing about how a trial court should resolve a motion to withdraw a guilty plea made under the same circumstances.

No other court has applied *Ibarra* to a motion to withdraw a guilty plea.  The majority opinion cites *State v Solano*[12] and *State v Tietjens*[13] to show that the Arizona Supreme Court applies *Ibarra* to motions to withdraw a plea.  But in *Solano*, the Arizona Supreme Court held that "*whenever a plea is taken* pursuant to a 'package deal' the trial court is required to conduct a careful inquiry into the totality of the circumstances

---

[11] *Id*. at 288-290 (citations omitted).

[12] *State v Solano*, 150 Ariz 398; 724 P2d 17 (1986) (en banc).

[13] *State v Tietjens*, 151 Ariz 560; 729 P2d 914 (1986) (en banc).

surrounding the plea."[14]  Likewise, in *Tietjens*, the Arizona Supreme Court concluded: "In the period since defendant filed this appeal, we upheld the legality of package-deal plea agreements in *State v Solano*, . . . as long as the trial court carefully inquires into the totality of circumstances in examining the voluntariness of the plea."[15]  Thus, Arizona, like California, only applies the *Ibarra* totality-of-the-circumstances analysis during the plea-taking process and not when considering a motion to withdraw a plea.

The majority opinion also cites Minnesota's Supreme Court to support its application of *Ibarra* to a motion to withdraw a plea.  But in *State v Danh*,[16] the Minnesota Supreme Court held:

> [T]he state must fully inform the trial court of the details of these agreements at the time a defendant enters a 'package deal' plea, and the trial court must then conduct further inquiries to determine whether the plea is voluntarily made.  In future cases, a defendant must be allowed to withdraw his or her guilty plea . . . *if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea*.  This holding is in accordance with those cases which hold that trial courts must take extra steps to determine the voluntariness of these types of pleas.[17]

And in *Butala v State*,[18] the Minnesota Supreme Court merely reaffirmed their holding in *Danh*.  Thus, Minnesota holds that *Ibarra*'s test applies only to the plea-taking process, not to a motion to withdraw a plea.  Likewise, neither Washington nor Massachusetts have

---

[14] *Solano*, 150 Ariz at 402 (emphasis added), citing *In re Ibarra*, 34 Cal 3d at 288.

[15] *Tietjens*, 151 Ariz at 562, citing *In re Ibarra*, 34 Cal 3d at 288.

[16] *State v Danh*, 516 NW2d 539 (Minn, 1994).

[17] *Id*. at 542-543 (emphasis added), citing *In re Ibarra*, 34 Cal 3d at 288.

[18] *Butala v State*, 664 NW2d 333, 339-340 (Minn, 2003).

applied *Ibarra* to a motion to withdraw a plea. In *State v Williams*,[19] the Washington Court of Appeals held:

> A plea is not invalid if entered pursuant to a plea agreement that includes leniency for a third party . . . .
>
> . . . [But] the court must specifically inquire about whether the codefendant pressured the defendant to go along with the plea and carefully question the defendant to ensure he is acting of his own free will.[20]

The Washington Court of Appeals plainly intended for this inquiry to be conducted at the plea-taking process and not during a hearing on a motion to withdraw a plea. And in *Commonwealth v DiBenedetto*,[21] the Supreme Judicial Court of Massachusetts simply held that "courts in other jurisdictions have required that, for a package deal to be enforced, the parties must notify the court that a package deal exists, and the court must inquire into the voluntariness of the package agreement with special care."[22] The Supreme Judicial Court of Massachusetts concluded that "courts in Massachusetts should adopt a similar approach."[23]

In sum, the majority opinion does not identify a single other state that has applied *Ibarra* to a motion to withdraw a plea. And the majority opinion's position that *Ibarra* has been "adopted by other state courts" in the same way this Court now adopts and applies *Ibarra* is wrong.

---

[19] *State v Williams*, 117 Wash App 390; 71 P3d 686 (2003).

[20] *Id*. at 400.

[21] *Commonwealth v DiBenedetto*, 491 Mass 390; 203 NE3d 579 (2023).

[22] *Id*. at 406 (cleaned up).

[23] *Id*.

In addition to applying inapposite law in a novel way, this Court's decision to adopt *Ibarra* in this case's context also ignores the unanimous wisdom of the federal courts. The Court of Appeals correctly noted that Michigan courts have not adopted a test to determine when a joint plea bargain offered to relatives or any other third party is involuntary and may be withdrawn.[24] It then noted, however, that federal courts "have addressed this issue in great detail."[25] First, the Court of Appeals noted that federal courts do not treat offers of leniency to relatives or third parties as particularly problematic.[26] Second, the Court of Appeals quoted from *United States v Seng Chen Yong*,[27] in which the United States Court of Appeals for the Ninth Circuit held that " 'a defendant may successfully challenge the voluntariness of his plea by showing that probable cause to prosecute the third party did not exist at the time the defendant pleaded guilty . . . .' "[28] In *Seng Chen Yong*, the Ninth Circuit noted that "[e]very federal court of appeal to consider the issue . . . has held that plea agreements that condition leniency for third parties on the defendant's guilty plea are permissible so long as the Government acted in 'good faith,' meaning that it had probable cause to prosecute the third party."[29] The federal approach to motions to withdraw a plea

---

[24] See *Samuels*, 339 Mich App at 675.

[25] *Id*.

[26] See *id*. at 675-676.

[27] *United States v Seng Chen Yong*, 926 F3d 582 (CA 9, 2019). In *Seng Chen Yong*, the defendant argued that his plea was coerced because it included an offer to drop felony charges against his son. *Id*. at 585.

[28] *Samuels*, 339 Mich App at 678, quoting *Sen Chen Yong*, 926 F3d at 592.

[29] *Sen Chen Yong*, 926 F3d at 591, citing *United States v McElhaney*, 469 F3d 382, 385 (CA 5, 2006); *United States v Vest*, 125 F3d 676, 680 (CA 8, 1997); *United States v Wright*,

14

based solely on the fact that the plea was made pursuant to a joint plea deal offered to codefendants is simple: a defendant may withdraw a guilty plea on the grounds that it is involuntary because it was a joint plea if he or she establishes that the government did not have probable cause to prosecute the codefendant. Thus, the federal courts rely almost entirely on the plea-taking process to ensure that a joint plea is voluntary.[30]

Like the federal courts, our current rules sufficiently protect a defendant's constitutional rights by ensuring that the plea is voluntary. Thus, when a trial court reviews a motion to withdraw a guilty plea that is based solely on the fact that the plea was a joint plea offered to relatives, all that it must do is confirm that there was probable cause to prosecute the codefendants.[31] If there was probable cause to prosecute each defendant, the

43 F3d 491, 499 (CA 10, 1994); *United States v Pollard*, 295 US App DC 7, 17-18; 959 F2d 1011 (1992); *United States v Marquez*, 909 F2d 738, 742 (CA 2, 1990); *Martin v Kemp*, 760 F2d 1244, 1248 (CA 11, 1985); *Harman v Mohn*, 683 F2d 834, 837 (CA 4, 1982); *United States v Nuckols*, 606 F2d 566, 569-570 (CA 5, 1979); *Politte v United States*, 852 F2d 924, 929 (CA 7, 1988).

[30] To be clear, defendants in federal court may raise a host of other collateral attacks on the plea-taking process; in *Seng Chen Yong*, the Ninth Circuit merely recognized that when a defendant moves to withdraw his guilty plea *solely because it was a joint plea*, the trial court need not conduct an entirely new plea colloquy because a simple finding of probable cause to prosecute the codefendant is sufficient to establish that the prosecution was valid, and the unchallenged plea bargain—conducted in line with established rules—was proper.

[31] The federal courts recognize that an offer of leniency to a relative is more likely to coerce a defendant into pleading guilty. But while the federal courts recognize a difference between related codefendants and unrelated codefendants, the test applied to each is the same. In this case, this Court ordered briefing solely on whether an offer of leniency *to a relative* requires special protections because that was the issue appealed by defendant. The parties' briefing dutifully focused on the importance of family, with defendant's supplemental and reply briefs using the words "family," "relative," and "brother" a combined 142 times and the government's brief using those words 61 times. I would therefore limit this opinion to answering what standard a trial court must apply to a motion to withdraw a guilty plea premised solely on the fact that the plea was a joint plea offered

voluntariness inquiry made before accepting the plea is sufficient to ensure that the plea was voluntary.[32]

Adopting the federal approach to motions like the one in this case is sound and firmly rooted in our criminal law jurisprudence for two reasons. First, it emphasizes the adequacy and importance of MCR 6.302 and MCR 6.310. Trial courts know that they must conduct a full plea colloquy as described in MCR 6.302 and that a defendant must be permitted to withdraw his guilty plea under MCR 6.310 if there is any error in the trial court's application of MCR 6.302. By creating a new route to withdraw a plea on a late claim of involuntariness even though the trial court did not err in its application of MCR 6.302, the majority opinion undermines MCR 6.302 and MCR 6.310. In fact, the majority opinion summarily creates a special procedural tool that is only available to defendants who pleaded guilty pursuant to a package-deal plea without explaining why MCR 6.302 and MCR 6.310 are inadequate procedural safeguards.

Second, the federal standard streamlines the work of trial courts and prosecutors' offices, thereby providing defendants with predictability and the opportunity to plead to avoid the possibility of a conviction after trial and imposition of a more severe sentence.

_____

to relatives. I would leave for another day whether the same standard is applicable to nonrelative codefendants.

[32] Simply put, if a defendant alleges an error in the plea-taking process, then the trial court must determine whether an error was made in that process as required by MCR 6.310. But when a defendant does not allege an error in the plea-taking process—as is the situation here—a trial court does not have to review the plea-taking process or conduct a second voluntariness hearing. In such a case as this one, all the trial court need do is confirm that there was probable cause to prosecute the codefendants who were included in the joint plea deal; i.e., that the prosecution is not de jure invalid.

16

By complicating the validity of joint plea deals, the majority opinion makes it more likely that prosecutors' offices will not offer plea bargains to any codefendant, forcing all codefendants to risk worse outcomes, like convictions of a greater offense at trial and longer sentences.

The majority opinion's approach compels trial courts deciding motions like the one in this case to conduct a nearly identical voluntariness analysis to the one it conducted under MCR 6.302. The process adopted in the majority opinion will thus burden trial courts, whose workload will unnecessarily increase. It will also burden prosecutors' offices whose work to finalize a plea bargain acceptable to the government and the defendant may be undone—after the plea colloquy designed to determine whether the plea is voluntary has occurred—merely because a defendant makes a bare allegation that one aspect of the plea bargain caused the defendant to plead involuntarily.[33] Last, the majority opinion will harm defendants. By making joint plea bargains more arduous to complete, more vulnerable to attack, and less certain, the majority opinion makes it less likely that prosecutors will offer plea bargains to codefendants.

---

[33] The majority attempts to make its holding appear narrower by holding that an evidentiary hearing is required only if "the record raises a question of fact as to whether the defendant's plea was induced by a promise of leniency to a third party." But when a defendant alleges that his joint plea was coercive, it is hard to see how this would ever not be sufficient to establish a question of fact under the majority's exceedingly low threshold. If something more is required, the majority never explains what it is.

By the same token, it is unclear what the majority expects to happen at the evidentiary hearing it now requires. In most cases, the defendant will be the only individual who can give testimony relevant to the *Ibarra* factors. It is therefore unclear what the trial court should weigh against the defendant's testimony.

Defendants like the one in this case may find themselves forced to go to trial and risk convictions of greater offenses and longer prison sentences because prosecutors' offices are unwilling to spend time crafting and negotiating a joint plea bargain that is far more likely to fail. I seriously doubt that this is the majority's intention.

## II. CONCLUSION

In this case, we consider what procedure a trial court must apply when resolving a motion to withdraw a plea that is allegedly involuntary solely because it was part of a joint plea deal offered to relatives. The majority opinion ignores the combined wisdom of every federal court and adopts a test used by the California Supreme Court *in different circumstances*. Indeed, the majority opinion makes Michigan the first jurisdiction in the nation to require trial courts to conduct a second plea colloquy whenever a defendant who pleaded guilty in a joint plea alleges that his plea was involuntary merely because it was a part of a joint plea deal. I dissent from the majority opinion because I agree with the wisdom of the federal courts and our sister states that the existing plea-taking framework is sufficient, and I would not adopt and expand the California test to motions to withdraw pleas. I would affirm the judgment of the Court of Appeals. Accordingly, I dissent.

Brian K. Zahra
David F. Viviano

18